# STATE OF CONNECTICUT *v.* WILLIAM FARADAY
## (AC 20667)

Schaller, Pellegrino and Dupont, Js.

Argued November 1, 2001—officially released April 30, 2002

*Tracey M. Lane,* special public defender, for the appellant (defendant).

*Michele C. Lukban,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Anne F. Mahoney,* assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. There are two basic issues in this appeal from the trial court's judgment, following a hearing, revoking the probation of the defendant, William Faraday, and imposing the defendant's original sentence of twelve years. One issue involves an interpretation of the language of the conditions of probation, and the other involves a determination of whether General Statutes § 53a-32a should be applied to the facts of this case. We conclude that the conditions of probation at issue were not violated and that § 53a-32a should not have been applied to the defendant. Accordingly, we reverse the judgment and remand the case to the trial court with direction to render judgment in favor of the defendant.[1]

The facts are not in dispute. On July 31, 1998, the defendant pleaded guilty under the *Alford* doctrine; *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); pursuant to a plea agreement to sexual assault in the third degree in violation of General Statutes § 53a-72a and risk of injury to a child in violation of General Statutes § 53-21. The charges related to events that occurred in 1991 and 1992. Prior to the plea bargain, there had been a mistrial because the jury was unable to reach a unanimous verdict. The court, *Clifford, J.,* accepted the *Alford* plea, and the defendant

---

[1] Because we reverse the findings of violations of the conditions of probation, we do not reach any issue relating to the discretionary, dispositional phase of the probation revocation hearing. Without a violation of a condition of probation, there could be no revocation.

was sentenced to a total of twelve years imprisonment, execution suspended, and five years probation. The court imposed various conditions of probation.

At the time of the sentencing, the defendant was living with a woman, Eileen Kennedy, and her son. The son was not involved in the criminal events for which the defendant was charged and was two and one-half years old at the time the defendant was sentenced. By the time of the revocation hearing, the defendant had married Kennedy.

In October, 1999, the defendant was charged with violating two of the conditions of his probation. The application for the arrest warrant stated that he had violated the "following conditions of his probation: 1. Sex offender treatment as deemed appropriate by adult probation; 2. No unsupervised contact with any child under the age of 16. The supervisor cannot be someone defendant is romantically involved with. The exception is a situation the defendant is presently in."

After the probation revocation hearing, conducted on February 3 and 4, 2000, the court, *Wollenberg, J.*, found that the defendant had violated the two conditions of probation, as charged.[2] The court interpreted one condition of probation as prohibiting the defendant from contact with his stepson, even in the presence of his wife, unless she had been approved by the department of children and families (department) as a supervisor, and found that such unsupervised contact had occurred during the summer of 1999. The court did not

[2] The judgment file, signed by a court clerk, but not the court, states that the defendant was found "guilty in count one, violation of probation, in violation of Connecticut General Statutes section 53a-32." There is no mention of the other condition of probation. Both parties briefed and argued issues relating to both conditions, and the court addressed both in its oral decision. We review the case as if the judgment related to both conditions. See *Lucisano* v. *Lucisano*, 200 Conn. 202, 206, 510 A.2d 186 (1986); *Lehto* v. *Sproul*, 9 Conn. App. 441, 445, 519 A.2d 1214 (1987).

specifically cite § 53a-32a, but found that the defendant also had violated the condition of probation requiring "[s]ex offender treatment as deemed appropriate by probation . . . ." The court then concluded that the rehabilitative purposes of probation had been thwarted by the defendant's attitude and conduct, and revoked his probation, sentencing him to the twelve years imprisonment originally imposed. The defendant has been incarcerated ever since, namely, since February 4, 2000.

A probation hearing involves two distinct components. First, the court conducts an adversarial evidentiary hearing to determine whether the defendant has violated a condition of probation, which violation must be established by a fair preponderance of the evidence. *State* v. *Davis*, 229 Conn. 285, 295, 641 A.2d 370 (1994). If the evidence supports a violation, the court then exercises its discretion and determines whether the beneficial, rehabilitative purposes of probation are still being served or whether the need to protect the public outweighs the probationer's interest in liberty. Id., 296–97.

"Probation revocation proceedings fall within the protections guaranteed by the due process clause of the fourteenth amendment to the federal constitution. *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). That clause provides in relevant part: '[N]or shall any State deprive any person of life, liberty or property, without due process of law . . . .' U.S. Const., amend. XIV, § 1. Probation itself is a conditional liberty and a privilege that, 'once granted, is a constitutionally protected interest.' *State* v. *Davis*, supra, 229 Conn. 294. The revocation proceeding must comport with the basic requirements of due process because termination of that privilege results in a loss of liberty. Id." *State* v. *Reilly*, 60 Conn. App. 716, 726, 760 A.2d 1001 (2000).

I

## THE CONDITION OF UNSUPERVISED CONTACT

The conditions of probation were mentioned three times on the day that the defendant pleaded guilty under the *Alford* doctrine. The first time was immediately after the state's recitation of the plea agreement, at which point the defendant's counsel asked for a brief recess.[3] The second time was after the recess when the court asked if there had been any alteration of the conditions of probation and what the specific conditions of the agreement were.[4] The third and most important and most relevant occasion when the conditions were recited was when the court sentenced the defendant and imposed the conditions.

The conditions of probation as stated by the sentencing court were as follows: "The conditions on the proba-

---

[3] The state's recital of the conditions was as follows: "[T]he normal conditions of probation to these charges, which would be no contact with the victim, the victim's family, no unsupervised contact with any minor under the age of sixteen, and the supervisor cannot be someone whom the defendant has a romantic interest in . . . ." It is clear from the transcript that the defendant's need for a recess related to the omission of any reference in the conditions to the child of Kennedy when the prosecutor first mentioned the proposed conditions of probation.

[4] The following colloquy took place at that time:

"[Prosecutor]: . . . [T]he specific conditions will be again no contact with the victim or the victim's family, sex offender counseling as deemed appropriate by adult probation, no unsupervised contact with children under the age of sixteen and the supervisor cannot be someone with whom he has a romantic relationship, with the exception of the child that he's currently living with, that if [the department] finds that that's appropriate, the state will not object to that."

"The Court: So, it's no unsupervised contact with a child under the age of sixteen. The supervisor cannot be somebody who he is romantically involved with, but his present situation is an exception to that.

"[Prosecutor]: As long as the department of children and families finds that that's an appropriate level of contact that he has with that child.

"The Court: So, he can stay with that relationship unless [the department] says otherwise.

"[Prosecutor]: Yes."

tion, besides any usual conditions, [are] no contact, obviously directly or indirectly, with the victim or the victim's family; sex offender treatment as deemed appropriate by probation; no unsupervised contact with any child under the age of sixteen; the supervisor cannot be somebody that you are romantically involved with; the only exception to that condition is your current situation right now with a woman and a child. Obviously, however, though, *if* [the department] gets involved and does not feel that is appropriate that *you're going to be there*, then that's going to be the end of that." (Emphasis added.)

The written conditions of probation given to the defendant and signed by him on July 31, 1998, were as follows: "No contact directly [or] indirectly [with the] victim or victim's family. Sex offender treatment deemed appropriate by [probation]. No unsupervised contact [with] any child under the age of 16. The supervisor *cannot* be someone [that the defendant] is romantically involved with. Exception is the situation [the defendant] is presently in [girlfriend with child] unless [the department] is not satisfied with the arrangement." (Emphasis in original.)

On October 26, 1998, the supervision of the defendant began. At that time, he was advised to register with the commissioner of public safety as a sex offender. See General Statutes § 54-251. On October 29, 1998, he was referred to Connection, Inc., a center for the treatment of problem sexual behavior.

The alleged breach of the condition of unsupervised contact with a child under the age of sixteen involves the defendant's stepson and does not involve any other minor. As previously stated, the stepson was not involved in the criminal events with which the defendant was charged and was two and one-half years old at the time of the sentencing. The defendant was not

then married to the child's mother, Kennedy, although he was living with her and her son at the time. By the time of the probation revocation hearing, the defendant had married the child's mother, sometime prior to May, 1999.

The question we must resolve is whether the defendant violated the condition of his probation relating to contact with his stepson, which in turn rests on how we interpret the conditions imposed by the court. The interpretation of a probation condition is a question of law and requires a de novo review on appeal. *State* v. *Reilly*, supra, 60 Conn. App. 727–28. If we interpret the condition, as did the court that presided at the probation revocation hearing, to prohibit the defendant's contact with Kennedy's son unless the department previously approved Kennedy as a supervisor, we would then need to determine whether the evidence was factually sufficient by a fair preponderance of the evidence to establish such contact. The court's factual ruling that a violation of probation had occurred would not be disturbed by this court unless it was clearly erroneous. Id., 725. We conclude that the condition, as imposed by the sentencing court, did not preclude the defendant from having contact with his stepson in the presence of the child's mother unless the mother had been previously approved by the department as a supervisor. We, therefore, need not reach the question of the factual sufficiency underlying the finding of contact.[5]

---

[5] At an unannounced visit to Kennedy's home on September 7, 1999, a representative of the department and the defendant's probation officer spoke to Kennedy's son alone. The child was first asked if he had seen the defendant, and he said "no." There was a picture in the home depicting the defendant and the child, and the child was asked when it was taken. The child answered that the picture was taken in the summer when they went to a beach. The probation officer testified that the child said the picture was taken when "I went to the beach with Billy and mommy after they got married" or "words to that effect." The department's representative stated that the child appeared to be about the same age on September 7, 1999, as he appeared in the picture. In September, 1999, the child was three years old. The picture was undated and could have been taken in the summer of

We begin our analysis by noting that it is the conditions that the court imposed in pronouncing its sentence that we must examine, rather than the conditions sought by the state or the defendant. We also note that the condition imposed by the court relating to unsupervised contact made no mention of any special training Kennedy must undergo before being approved as a supervisor, or that she needed approval as a supervisor.

The probation officer testified that when he began his supervision of the defendant at an October 27, 1998 meeting, the defendant said he understood that his current girlfriend was already approved as a supervisor for him when he was around minors. The officer told the defendant that Kennedy could not be a supervisor without a counselor's approval and the probation officer's approval. The officer did not testify that he told the defendant that the department did not approve of any contact with his girlfriend's child, as opposed to other minors, while Kennedy was there. On December 1, 1998, the probation officer was told by the department that it was keeping a file on the defendant. There was no indication in evidence that the child had been abused or was in any danger of abuse by the defendant, his mother or anyone else. The department involved itself in the case solely because the defendant had pleaded guilty to being a sex offender and, according to the department's representative, because his wife refused to believe he was a sex offender.

The plain words of the condition, as stated by the sentencing court, indicate that the court was aware that the defendant was "there," meaning in the home with

1998 or 1999. If it was taken in the summer of 1998, before the sentencing on July 21, 1998, there would be no proof of any prohibited contact by the defendant with the child, supervised or not. Neither the probation officer nor the department's representative asked the defendant or Kennedy when the picture was taken, nor was the picture introduced in evidence at the hearing.

his girlfriend and her child at the time of sentencing. It is clear from the transcript of the sentencing hearing that the defendant sought an exception to the condition relating to his contact with minors so that he could continue his present arrangement, because his counsel asked for a recess when the recitation of the plea bargain by the state did not include that exception. The court used the word "if" in mentioning any department involvement. If the court had wanted the department to be involved from the onset of probation as a condition, it could have so ordered. If the department had to preapprove the contact with the child, by requiring training of the defendant's girlfriend as a supervisor, the court's words "the only exception to that condition [no unsupervised contact with a child under sixteen] is your current situation *right now* with a woman and a child," would be meaningless. If interpreted as the state argues, there would be no exception, and there would be no need to characterize it as an "exception." In other words, the sentencing court intended that the status quo would continue *unless* there were some reason for the department to become involved. Kennedy could not, nor could anyone else with whom the defendant was romantically involved, however, act as supervisor for other children under the age of sixteen.

The words of the condition give no hint that "unsupervised" is a word of art, meaning the absence of a person who has been specially trained and approved by the department. In ordinary language, "to supervise" is "to oversee." It does not mean "to obtain special training." We conclude that the condition of probation did not prohibit contact between the defendant and Kennedy's son and could continue *until* some event triggered the department's involvement. There is no such evidence in this case. Given the court's words relating to the condition, it was entirely appropriate for the defendant

to continue his existing relationship with Kennedy and her child.

The office of adult probation can require a defendant to comply with all conditions a court could have imposed, as long as they are not inconsistent with any condition actually imposed. General Statutes § 53a-30 (b).[6] Here, the condition required by the office of adult probation was inconsistent with those required by the court.

We hold, on the basis of our interpretation of the court's words that outlined the conditions of probation, that the condition of probation could not be modified by the probation officer without some indication of wrongdoing necessitating the department's involvement.[7] Because the condition was not violated, the defendant's probation could not be revoked on that basis.

## II

### THE CONDITION OF SEX OFFENDER TREATMENT

The second condition of probation that the court in the probation revocation hearing found to have been violated was that the defendant receive sex offender treatment. The defendant was discharged from such treatment because of his failure to admit guilt to the underlying charges. Section 53a-32a[8] is expressly appli-

---

[6] General Statutes § 53a-30 (b) provides: "When a defendant has been sentenced to a period of probation, the Office of Adult Probation may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) which are not inconsistent with any condition actually imposed by the court."

[7] In view of our holding, whether the defendant or Kennedy received notice of Kennedy's inability to be a supervisor as defined by the department becomes irrelevant.

[8] General Statutes § 53a-32a provides: "If a defendant who entered a plea of nolo contendere or a guilty plea under the Alford doctrine to a violation of subdivision (2) of section 53-21 or section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b, and was ordered to undergo sexual offender treatment as a condition of probation, becomes ineligible for such treatment because of his refusal to acknowledge that he committed the act or acts charged,

cable to the charges for which the defendant pleaded guilty under the *Alford* doctrine and provides that failure to complete the sex offender treatment program by refusing to admit guilt is deemed to be a violation of a condition of probation.

Nothing in the record indicates that the defendant at anytime was aware of, or was told of, the existence of the statute. The defendant was told, however, on July 28, 1999, one year after sentencing and the imposition of the condition, and approximately six months after treatment began by Connection, Inc., that if he continued to deny his guilt, he would be terminated from the treatment program and that his unsuccessful discharge from counseling would result in a violation of his probation.[9] In addition, and specifically, the defendant was told that he must admit guilt or submit to a physiological detection test.[10]

such defendant shall be deemed to be in violation of the conditions of his probation and be returned to court for proceedings in accordance with section 53a-32."

[9] On December 14, 1998, the defendant signed a treatment contract with Connection, Inc., an independent corporation engaged by the office of adult probation of the state of Connecticut, to treat problem sexual behavior. The contract contains thirteen agreements or conditions, some of which were checked and initialed by the defendant. Condition 12 (b) was not checked or initialed and states: "If I am a Probation client, I understand that denial of my behavior means I am accorded a conditional acceptance. Unwillingness to acknowledge my behavior within six months may mean the possibility of termination."

[10] Submission to such a test is not a likely condition a court would have imposed at the time of sentencing because lie detector tests are not admissible as evidence in court. See *State* v. *Porter*, 241 Conn. 57, 59, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). It is questionable, therefore, whether the office of adult probation properly could have enlarged or modified the condition of receiving sex offender treatment pursuant to General Statutes § 53a-30 (b) by adding such a condition. General Statutes § 53a-30 (b) allows the office of adult probation to require the defendant to comply with any conditions a court could have imposed so long as the condition is not inconsistent with any condition actually imposed by the court. Furthermore, it is not clear what would have happened to his discharge from counseling because of his denials, if the defendant had "passed" the lie detector test, that is, if he had been found

The conduct complained of was not criminal behavior of which the defendant would have imputed knowledge. See *State* v. *Lewis*, 58 Conn. App. 153, 157–58, 752 A.2d 1144, cert. denied, 254 Conn. 917, 759 A.2d 508 (2000). The conduct, rather, was his continued denial during his trial, his plea bargain, his *Alford* plea, his sentencing on July 31, 1998, and his sex offender treatment, that he had committed the crimes of which he was accused.

General Statutes § 53a-32a became effective on October 1, 1997.[11] Ten months later, July 31, 1998, the defendant pleaded guilty under the *Alford* doctrine to crimes allegedly committed in 1991 and 1992.

At the time of the alleged criminal acts, a failure to admit guilt during sex offender treatment following an *Alford* plea would not have resulted in an automatic violation of a condition of probation. The question is whether § 53a-32a changed the legal consequences flowing from the commission of acts prior to the passage of the legislation. We must conclude, in accordance with the recent case of *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 819–29, 786 A.2d 1091 (2002), that § 53a-32a can be applied only prospectively because it is substantive and imposes a new obligation

---

not to have been deceptive in his denials. See generally annot., 86 A.L.R.4th 709 (1991).

[11] We are not aware of any case that interprets the statute, nor are we aware of any other state with a similar statute. We need not determine, for the purposes of this opinion, whether General Statutes § 53a-32a would pass constitutional muster as containing a statutory conclusive presumption violative of the due process clause of the fourteenth amendment to the United States constitution. See *Ducharme* v. *Putnam*, 161 Conn. 135, 140–43, 285 A.2d 318 (1971). The possible statutory presumption is that a defendant who pleads under the *Alford* doctrine to a violation of certain crimes, who is ordered to undergo sexual offender treatment as a condition of probation and who subsequently becomes ineligible for such treatment because he refuses to acknowledge that he committed the acts charged, "shall be deemed to be in violation of the conditions of his probation . . . ." General Statutes § 53a-32a.

on persons such as the defendant.[12] Also, pursuant to *Johnson*, the absence of any indication in the legislative history of the statute that it should be applied retroactively indicates that it should be applied prospectively. Id., 819–20; see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1997 Sess., pp. 532–34.

To apply the statute retroactively could cause incongruities among persons similarly situated. For example, if another defendant had committed the acts in 1991 and 1992, but had pleaded under the *Alford* doctrine prior to October 1, 1997, he or she would not have automatically violated a condition of probation by failing to admit guilt during sex offender treatment. It is unlikely that the legislature intended that two similarly situated offenders would receive different treatment "based solely on the fortuity of when their cases came to trial." *Johnson* v. *Commissioner of Correction*, supra, 258 Conn. 829. Because the statute should be applied only prospectively, the defendant cannot be deemed, because of the statute, to have violated the condition of his probation that required sex offender treatment. In short, the statute cannot be applied to this defendant.

We next consider whether, without applying the statute to the defendant, he could be found to have violated the condition of probation requiring sex offender treatment.[13] That is a question of law for which our review is plenary. *State* v. *Reilly*, supra, 60 Conn. App. 727–28.

___

[12] We do not reach the question of whether a retroactive application of the statute violates the ex post facto clause of the constitution of the United States. See *Johnson* v. *Commissioner of Correction*, supra, 258 Conn. 817–18.

[13] In other, future cases involving a prospective application of the statute, no discussion of a defendant's failure to acknowledge the acts covered by the statute after an *Alford* plea would be necessary. The discussion would not be necessary because such defendants would have statutory notice that a denial of those acts could be a violation of the condition of probation that required sex offender treatment.

At the sentencing and during the recitation by the court of the conditions of probation that followed the defendant's plea, no mention was made of

The state views the defendant's failure to admit he committed the crimes as a per se violation of that condition of probation that required him to receive sex offender treatment. In other words, the state argues that it makes no difference whether a defendant pleads guilty, pleads guilty under the *Alford* doctrine or is found guilty after a trial in terms of whether he can receive effective sex offender treatment, without admitting guilt. The state, however, acknowledges some difference by the fact that the office of adult probation has a special sex offender treatment program for those who deny guilt.[14]

Due process requires that a probationer receive fair warning of the conduct proscribed by the conditions of probation. *United States* v. *Gallo*, 20 F.3d 7, 11–13 (1st Cir. 1994); see also *Mabry* v. *Johnson*, 467 U.S. 504, 509, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984); *Mace* v. *Amestoy*, 765 F. Sup. 847, 849–50 (D. Vt. 1991). Thus, the question is whether the defendant received prior fair warning that failure to admit the acts with which he was charged would be considered a violation of the probation condition that required him to obtain sex offender treatment. Phrased differently, the question is whether the defendant is deemed to have knowledge, at the time he pleaded guilty under the *Alford* doctrine or when he signed the conditions of probation or when he attended the sex offender treatment sessions, that a failure to admit guilt would result in a revocation of

the statute. The statute was mentioned by the state during oral argument at the conclusion of the probation revocation hearing, but it was not mentioned by the court in its decision to revoke probation or in its finding of a violation of the condition of obtaining sex offender treatment. The judgment file states that the defendant was found "guilty in count one, violation of probation, in violation of Connecticut General Statutes section 53a-32."

[14] The record does not reveal that there was any attempt to place the defendant in such a special program. Other states also require sexual offender treatment for those who deny their acts or the sexual intent of their acts. See *People* v. *Birdsong*, 958 P.2d 1124, 1126 (Colo. 1998) (en banc).

probation. In this case, the conditions of probation were silent as to any admission of the underlying acts with which the defendant was charged. The only agreement relating to a failure to admit the acts with which the defendant was charged and signed by the defendant; see footnote 9; was ambiguous and was not an agreement with the office of adult probation.

A defendant may voluntarily, knowingly and understandingly consent to the imposition of a sentence even though he is unwilling to admit participation in the crime, or even if his guilty plea contains a protestation of innocence, when he concludes that his interests require a guilty plea and the record supports guilt. *North Carolina* v. *Alford*, supra, 400 U.S. 37–39. Here, the defendant was willing to waive his right to another trial after one trial had resulted in a mistrial and agreed to plead guilty even though he maintained that he was not guilty.

Few cases address the question of whether, after an *Alford* plea, denial of the behavior with which a defendant was charged during sex offender treatment is a violation of a condition of probation requiring sex offender treatment. A failure to inform the defendant at the time of his *Alford* plea that he might have to admit guilt during sex offender treatment does not render the plea unknowing or constitute a breach by the state of the terms of the *Alford* plea. *State ex rel. Warren* v. *Schwarz*, 219 Wis. 2d 615, 634, 579 N.W.2d 698, cert. denied sub nom. *Warren* v. *Wisconsin*, 525 U.S. 966, 119 S. Ct. 413, 142 L. Ed. 2d 335 (1998). *State ex rel. Warren* does not reach the issue of what is constitutionally required by due process in terms of notice because that issue was not raised at the trial level. It does, however, hold that defendants do not have a due process right to be informed *by the court* of consequences that are collateral to their pleas, such as that the future

failure to admit guilt might result in a violation of a condition of probation. Id., 636.

There are cases from other jurisdictions that hold that after a defendant has pleaded guilty pursuant to the *Alford* doctrine, knowingly, voluntarily and understandingly, he will not be deemed to be in violation of a condition of probation requiring sex offender treatment or counseling by denying guilt unless he is informed at the time of the plea that he would be required to admit guilt during treatment. See, e.g., *People* v. *Walters*, 164 Misc. 2d 986, 988–89, 627 N.Y.S.2d 289 (1995). "To require a defendant to admit to his factual guilt during treatment, upon threat of incarceration, is directly inconsistent with the plea agreement. . . ." *State* v. *Birchler*, No. 00AP-311 (Ohio App., Oct. 5, 2000) (unpublished opinion).

There also are cases that hold that when a condition of probation requires sex offender treatment as part of the probation conditions, after an *Alford* plea, there is a violation of the condition if the defendant refuses to admit guilt, for which probation may be revoked. Those cases, however, include the significant fact that the defendant was aware that could be the case at the time of his plea. *People* v. *Birdsong*, 958 P.2d 1124, 1127 (Colo. 1998) (en banc); *State* v. *Jones*, 129 Idaho 471, 474, 926 P.2d 1318 (Idaho App. 1996); *Razor* v. *Commonwealth*, 960 S.W.2d 472, 474–75 (Ky. App. 1997); see also *State* v. *Alston*, 139 N.C. App. 787, 793, 534 S.E.2d 666 (2000) (defendant told he would be treated as if guilty even though he was pleading under *Alford* doctrine); *State* v. *Smith*, 812 P.2d 470, 473 (Utah App. 1991) (defendant pleaded nolo contendere, told plea equivalent of guilty plea), cert. denied, 836 P.2d 1383 (Utah 1992).

"[T]here is a fundamental inconsistency between an *Alford* plea and a probation condition that requires an

admission of guilt. That inconsistency does not exist when the plea is not premised on *Alford." State* v. *Fisk,* 165 Vt. 260, 262–63, 682 A.2d 937 (1996). Such an inconsistency is allowable if a defendant has fair notice that a future denial of guilt may result in a violation of a condition of probation. On the facts of this case, the defendant did not have prior fair warning from the court or a probation officer that his denials to Connection, Inc., could dissipate his purpose in pleading under the *Alford* doctrine, could result in a choice of an admission of guilt or submission to a physiological test and, ultimately, to a revocation of probation. Without such fair notice, where the proscribed act is not criminal, due process mandates that the probationer cannot be subject to a forfeiture of his liberty. *State* v. *Reilly,* supra, 60 Conn. App. 729. The violation of the condition of probation here was a direct consequence of an *Alford* plea.[15] Because the defendant, on the facts of this case, did not violate either of the conditions of probation with which he was charged, the judgment of revocation must be reversed.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

[15] We do *not* hold that trial courts have a duty to advise defendants of the provisions of General Statutes § 53a-32a. In those future few cases in which the statute cannot be applied retroactively, courts might consider informing defendants pleading guilty under the *Alford* doctrine that their protestations of innocence extend only to the plea itself and do not serve as a guarantee that they cannot subsequently be punished for violating the terms of probation, which may require an admission of guilt. "[C]ourts accepting such [*Alford*] pleas [from sexual offenders] should take extra care to ensure that defendants understand that in order to successfully complete the treatment program, they will be required to admit guilt." *State ex rel. Warren* v. *Schwarz,* supra, 219 Wis. 2d 653. Even without an *Alford* plea, it has been held that a trial court must advise a defendant after a guilty plea, following plea negotiations, that he must admit guilt in connection with counseling or treatment required as a condition of probation, if that is the case. See *Diaz* v. *Florida,* 629 So. 2d 261, 262 (Fla. App. 1993).

In this opinion PELLEGRINO, J., concurred.

SCHALLER, J., concurring in part and dissenting in part. I agree with part I of the majority decision. I respectfully disagree, however, with part II, in which the majority concludes that (1) there is a fundamental inconsistency between an *Alford*[1] plea and a probation condition that requires an admission of guilt, and (2) that "the defendant did not have prior fair warning . . . that his denials . . . [of a problem] could dissipate his purpose in pleading under the *Alford* doctrine [and] could result . . . [in] a revocation of probation," thereby denying him his right to due process. I believe that (1) there is no inconsistency, and (2) the court was not required to notify the defendant that compliance with his probation might require him to admit culpability or acknowledge a problem with the type of behavior that constitutes the underlying crime because such notice is a collateral consequence of his plea. I would affirm the judgment of the trial court.

An examination of the record reveals that the defendant entered a guilty plea under the *Alford* doctrine, which the court explained to the defendant during the plea canvass: "[Y]ou plead guilty, but you don't agree necessarily with everything that the state claims that you did or what they claim they could prove at trial. But you would rather plead guilty rather than run the risk of having another trial. Is that correct?" The defendant replied, "Correct." The court accepted the defendant's plea. At sentencing, in addition to the usual conditions, the court required the defendant to participate in "sex offender treatment as deemed appropriate by probation . . . ." On July 31, 1998, the defendant signed his conditions of probation, which included participation in sex offender treatment. Thereafter, his probation officer referred him to Special Services Center

[1] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

for the Treatment of Problem Sexual Behavior (also known as Connections, Inc.) for sex offender treatment[2] (special services).

On December 14, 1998, the defendant signed a treatment contract with special services, which contained the following applicable clause: "12 (a) If I am a Parole or Transitional Supervision client, I understand that my release and acceptance into treatment is based on my continued acknowledgment of my sexual offense behavior.

"(b) If I am a Probation client, I understand that denial of my behavior means I am accorded a conditional acceptance. Unwillingness to acknowledge my behavior within six months may mean the possibility of termination." The paragraph above the defendant's signature stated: "I understand and agree that *any* violation of the conditions of this contract may be grounds for termination from the Program. I also understand that my probation/parole/transitional supervision officer and/or [department of children and families] worker will be notified immediately of any violation of this contract. I understand that a copy of this contract will be forwarded to my supervising officer." (Emphasis in original.)

On July 28, 1999, the defendant's treatment counselor informed the defendant that he would have one more week to decide to either admit his offense or to submit to a physiological detection of deception test. His treatment counselor further informed him that failure to do one or the other would result in his discharge from counseling. The following day, July 29, 1999, the defendant's probation officer informed him that discharge

[2] Special services contracts with the state's office of adult probation to provide sex offender treatment to those probationers referred for assessment and treatment. It conducts group therapy sessions in the office of adult probation.

from treatment would result in violation of his probation.

On August 7, 1999, special services notified the defendant's probation officer that the defendant had been discharged from its treatment program for failing to acknowledge his culpability for the offense, which set him apart from other members of the group. Thereafter, the defendant's probation was revoked.

The defendant argues that the court improperly (1) applied General Statutes § 53a-32a retroactively to him[3] and (2) concluded that he violated his probation. Specifically, he argues that the court improperly revoked his probation after concluding that he violated his probation by failing to complete his sexual offender treatment. The crux of the defendant's argument is that his probation requirement to complete sexual offender treatment conflicted with his plea under the *Alford* doctrine because a treatment condition required him to admit culpability while the *Alford* doctrine allowed him to maintain his innocence while pleading guilty. During the course of treatment, the defendant refused to admit culpability or to acknowledge a problem with the type of behavior underlying the crime to which he pleaded guilty. He therefore was discharged from treatment. He argues that the court's failure to inform him that he would have to acknowledge responsibility or culpability to complete treatment and that failure to complete treatment would result in a revocation of probation denied him due process.

---

[3] The majority agrees with the defendant that the trial court improperly applied § 53a-32a *retroactively* to him. Although I do not agree with the majority that the trial court improperly applied § 53a-32a retroactively, I do not need to reach that issue. I focus my dissent on the majority's conclusion that the defendant did not receive fair warning that during treatment he might have to admit culpability or acknowledge a problem with the type of behavior underlying the crime to which he pleaded guilty to fulfill his probation requirement to receive sexual offender treatment.

The majority accepts the defendant's argument and concludes that (1) there is a fundamental inconsistency between an *Alford* plea and a probation condition that requires an admission of guilt, and (2) the defendant was not given fair warning that even though he pleaded guilty under the *Alford* doctrine he would be required to admit his guilt in sexual offender treatment or be discharged from treatment, resulting in violation of his probation.[4] I respectfully disagree with both conclusions.

## A

First, I address the issue of whether there is a fundamental inconsistency between an *Alford* plea and a probation condition that requires an admission of culpability or acknowledgement of a problem with the type of behavior underlying the crime to which a defendant pleads guilty. To determine whether there is an inconsistency, an evaluation of the fundamental principle on which all *Alford* pleas are based is necessary. The *Alford* plea has its roots in *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), in which the United States Supreme Court upheld the defendant's guilty plea even though he continued to proclaim his innocence. In *State* v. *Palmer*, 196 Conn. 157, 491 A.2d 1075 (1985), our Supreme Court observed that "[a] guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." Id., 169 n.3.

---

[4] I disagree that the special services treatment program required the defendant to admit his guilt to the underlying crime. The record reflects that what was sought of the defendant during treatment was that he acknowledge that he had a problem with the type of behavior underlying the crime to which he pleaded guilty, as detailed in provision 12 (a) of the contract with special services.

Significantly, the court in *Alford* concluded that there was no significant difference between a plea that refused to admit commission of the criminal act and a plea containing a protestation of innocence as long as the defendant intelligently concluded that his interest required entry of a guilty plea and the record before the judge contained strong evidence of actual guilt. *North Carolina* v. *Alford*, supra, 400 U.S. 37. In *Alford*, the court observed that a guilty plea under which the defendant maintains his innocence is the practical equivalent of a plea of nolo contendere. Id. An *Alford* plea, therefore, "has the same legal effect as a plea of guilty or nolo contendere on all further proceedings within the indictment." *State* v. *Banks*, 24 Conn. App. 408, 412, 588 A.2d 669 (1991). In other words, an *Alford* plea contains neither a special promise that a defendant will never have to admit his guilt, nor that the defendant's protestations of innocence will extend to future proceedings. See *North Carolina* v. *Alford*, supra, 37; see also *People* v. *Birdsong*, 958 P.2d 1124, 1129 (Colo. 1998) (en banc); *State* v. *Alston*, 139 N.C. App. 787, 793, 534 S.E.2d 666 (2000); *State ex rel. Warren* v. *Schwarz*, 219 Wis. 2d 615, 633–34, 579 N.W.2d 698, cert. denied sub nom. *Warren* v. *Wisconsin*, 525 U.S. 966, 119 S. Ct. 413, 142 L. Ed. 2d 335 (1998).

It is common practice for trial courts to impose various types of treatment, including sexual offender, mental health, and alcohol and drug abuse treatment, as conditions of probation to individuals who either have pleaded guilty, nolo contendere or guilty under *Alford*. See, e.g., General Statutes § 53a-30 (a). The objectives of probation are "to foster the offender's reformation and to preserve the public's safety," and requiring treatment correlates with those objectives. (Internal quotation marks omitted.) *State* v. *Misiorski*, 250 Conn. 280, 287, 738 A.2d 595 (1999). "It is a central tenet of sex offender treatment to require the offender to admit his

or her guilt. . . . This requirement, like any other con-
dition of probation, serves the goals of rehabilitation
and protection of the state and community interest."
(Citations omitted.) *State ex rel. Warren* v. *Schwarz*,
supra, 219 Wis. 2d 632 n.10.

I conclude that there is no fundamental inconsistency
between an *Alford* plea and a probation condition that
requires an admission of culpability or an acknowledge-
ment of a problem with the type of behavior underlying
the crime to which a defendant pleaded guilty. *Alford*
pleas are not treated differently from nolo contendere
pleas, which themselves, are not treated differently
from guilty pleas.[5] There is no special promise to a
defendant who pleads under *Alford* that he will never
have to admit culpability or acknowledge that he has
a problem with the type of behavior underlying the
crime to which he pleaded guilty. Furthermore, proba-
tion is a conditional release and is designed to assist
in the defendant's reformation while preserving public
safety. If the defendant is unwilling to acknowledge
that he has a problem that needs reforming, then the
purpose of rehabilitation is not being met and public
safety is jeopardized. I, therefore, conclude that there
is no inconsistency in requiring a person who pleads
under the *Alford* doctrine to admit during treatment
culpability or to acknowledge that he has a problem
with the type of behavior underlying the crime to which

[5] "The only practical difference [between a plea of nolo contendere and
a guilty plea] is that the plea of nolo contendere may not be used against
the defendant as an admission in a subsequent criminal or civil case."
(Internal quotation marks omitted.) *State* v. *Rish*, 17 Conn. App. 447, 456,
553 A.2d 1145, cert. denied, 211 Conn. 802, 559 A.2d 1137, cert. denied, 493
U.S. 818, 110 S. Ct. 72, 107 L. Ed. 2d 38 (1989). That is not the situation
before us. There is no subsequent criminal or civil case of which this court
is aware. The defendant has not shown, nor has the majority commented
on, how the defendant's admission during treatment of culpability or
acknowledgement of a problem with the type of behavior underlying the
crime to which he pleaded guilty might be used against the defendant.

he pleaded guilty and to revoke probation if the person fails to do so. Such a result as revocation of probation is consistent with any other type of violation of probation.

The majority argues that the defendant should have been placed in a different type of treatment program for sexual offenders who do not admit culpability. I am not persuaded. There is nothing in the record to show that the defendant requested the opportunity to participate in a different sexual offender treatment program or filed a motion pursuant to § 53a-30 (c) to modify the conditions of his probation. Moreover, the evidence indicates that the defendant would not qualify for treatment with the special group of persons who did not acknowledge culpability because of his uncooperative attitude during treatment at special services.

B

Next, I address the majority's conclusion that the defendant was not given fair warning that even though he pleaded guilty under the *Alford* doctrine, he would be required to admit his guilt in sexual offender treatment or be discharged from treatment, which would result in violation of his probation. See footnote 3. Although the majority states in a footnote that it does not impose a duty on the trial court to advise the defendant of the rules of a treatment program, the practical effect of the majority decision is that if a trial court does not so advise the defendant, the defendant will not have fair notice. In other words, the majority's conclusion amounts to imposing an obligation on the trial court at the plea hearing to inform the defendant that compliance with the sexual offender treatment requirement of his probation might require him to admit culpability or acknowledge a problem with the type of behavior underlying the crime to which he pleaded guilty. I respectfully disagree.

The trial court's mandatory advisement to the defendant during the plea hearing does not extend to the specific requirements of a treatment program in which the defendant must participate to comply with his probation because such requirements are collateral consequences of his plea. Rather, the trial court must advise the defendant only of the direct consequences of the guilty plea to satisfy the due process concerns that a plea be made knowingly, voluntarily and with a full understanding of the consequences thereof. *State* v. *Andrews*, 253 Conn. 497, 502–504, 752 A.2d 49 (2000); see also *Ramos* v. *Commissioner of Correction*, 67 Conn. App. 654, 662–63, 789 A.2d 502, cert. denied, 260 Conn. 912, 796 A.2d 558 (2002). Accordingly, a guilty plea is not rendered invalid by a trial court's failure to warn a defendant of the collateral consequences of his guilty plea. See *State* v. *Andrews*, supra, 505.

"Although a defendant must be aware of the direct consequences of a plea, the scope of 'direct consequences' is very narrow. J. Bond, Plea Bargaining and the Guilty Plea (2d Ed.) § 3.38. In Connecticut, the direct consequences of a defendant's plea include only the mandatory minimum and maximum possible sentences; Practice Book § [39-19 (2) and (4)]; the maximum possible consecutive sentence; Practice Book § [39-19 (4)]; the possibility of additional punishment imposed because of previous conviction(s); Practice Book § [39-19 (4)]; and the fact that the particular offense does not permit a sentence to be suspended. Practice Book § [39-19 (3)]; cf. J. Bond, supra [§ 3.38]. The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense." (Internal quotation marks omitted.) *State* v. *Andrews*, supra, 253 Conn. 504–505. To date, no direct consequences beyond those set forth in Practice Book § 39-19 have been identified by our Supreme Court or by this court; however,

several characteristics of direct consequences have been defined as those consequences that have a definite, immediate and largely automatic effect on the range of the defendant's punishment. *State* v. *Andrews,* supra, 507 & n.8; see also *Ramos* v. *Commissioner of Correction,* supra, 663.

Because the possible requirement that the defendant admit culpability or acknowledge a problem with the type of behavior underlying the crime to which he pleaded guilty is not defined as a direct consequence under Practice Book § 39-19, we need to evaluate whether that consequence has the characteristics of a direct consequence. The issue here, then, is whether the defendant's probation requirement to participate in sexual offender treatment, specifically the treatment program's requirement to admit culpability or to acknowledge that he has a problem with the type of behavior underlying the crime to which he pleaded guilty, had a definite, immediate and largely automatic effect on the range of the defendant's punishment and, thus, was a direct consequence of his plea.

I conclude that the treatment requirement to admit culpability or to acknowledge that the defendant has a problem with the type of behavior underlying the crime to which he pleaded guilty does not have definite, immediate and largely automatic effect on the defendant's punishment. The treatment requirement, therefore, is a collateral consequence and is not required to be included in an advisory canvass. First, it is not definite because it largely depends on the defendant's willingness to admit in a rehabilitative setting that he has a problem with the type of behavior underlying the crime to which he pleaded guilty. Some defendants who are unwilling to admit guilt at the plea stage could well be amenable to acknowledging a problem at the treatment stage. See, e.g., *People* v. *Birdsong,* supra, 958 P.2d 1128; *State ex rel. Warren* v. *Schwarz,* supra, 219 Wis.

2d 638. Second, it is not immediate, either in time or in impact, because the probation revocation would not have occurred if while receiving treatment he had admitted culpability or acknowledged that he had a problem with the type of behavior underlying the crime to which he pleaded guilty. Finally, it was not automatic because compliance with the requisite condition of his probation was within the defendant's own control. See, e.g., *State* v. *Waskiewicz*, 68 Conn. App. 367, 372, 789 A.2d 1164 (2002) (concluding that defendant, discharged from rehabilitation program required for probation, had control over own behavior and could have complied with rules of program, but failed to do so; thus, revocation justified). Moreover, it did not alter his total effective sentence or result in the imposition of any additional punishment. At sentencing, the trial court required the defendant to complete successfully sexual offender treatment, having suspended his twelve year sentence and ordering five years probation. When the defendant violated that condition of his probation, the court committed the defendant to the commissioner of correction to serve the twelve year term originally imposed. The condition, therefore, had no effect on the range of his punishment and hence was not a direct consequence of his plea.

I further disagree with the majority that the defendant did not have prior fair warning. "[A] defendant may receive notice and fair warning sufficient to comport with due process without necessarily receiving that notice from a court. Indeed, probation officers can provide adequate warning. Courts universally require, however, some set of circumstances, be it in a courtroom or in a meeting with a probation officer, a prohibition or common sense inference of a prohibition drawn from the situation, that creates an understanding and appreciation that engaging in certain conduct may

result in a termination of conditional liberty." *State* v. *Reilly*, 60 Conn. App. 716, 731, 760 A.2d 1001 (2000).

The defendant did receive notice and fair warning, sufficient to comport with due process, that his failure to admit culpability or to acknowledge that he had a problem with the type of behavior underlying the crime to which he pleaded guilty would result in his discharge from treatment and revocation of his probation. The record shows that the defendant agreed in court to the probation condition to obtain sex offender treatment as deemed appropriate by probation. The defendant not only agreed to that condition during the oral plea colloquy with the court, but also personally signed his conditions of probation on July 31, 1998. The defendant's probation officer referred him for sexual offender treatment to special services, with which the defendant had signed a contract. The contract contained a clause that specifically informed him that part of his treatment would include his "continued acknowledgment of [his] sexual offense behavior" and that "[u]nwillingness to acknowledge [his] behavior within six months may mean the possibility of termination." There is no evidence that the defendant objected to signing the contract with special services. The defendant was informed by his probation officer and by his treatment counselor that failure to admit his offense would result in discharge from counseling and violation of his probation. See, e.g., id., citing *Mace* v. *Amestoy*, 765 F. Sup. 847, 849–50 (D. Vt. 1991). At no time did the defendant request that his probation officer assign him to a different sex offender treatment program that did not require an acknowledgement of a problem with the type of behavior of the underlying crime. Either prior to signing the contract with special services or once the defendant realized that during treatment he had to acknowledge that he had a problem with the type of behavior underlying the crime to which he pleaded guilty to fulfill his

treatment, the defendant could have requested the court to modify his probation conditions on the basis that a sexual offender treatment program requiring such an admission or acknowledgement conflicted with his *Alford* plea. Instead, the defendant continued the treatment program until he was discharged more than seven months later. He should not be rewarded for his untimely objection to the probation condition after having acquiesced on so many occasions. Moreover, it is unreasonable to expect the trial court to anticipate the requirements of every treatment program that probation may require a defendant to complete. "An infinity of consequences flow from a guilty plea. A trial judge, or any human being for that matter, is in no position to advise on all the ramifications of a guilty plea personal to a defendant." (Internal quotation marks omitted.) *Ramos* v. *Commissioner of Correction*, supra, 67 Conn. App. 662.

The majority decision carves out an exception to the general rule that a court must instruct a defendant only on the direct consequences of a guilty plea. Direct consequences are enumerated in Practice Book § 39-19, the characteristics of which have been defined as having definite, immediate and automatic effect on the defendant's punishment. The rule of treatment that the defendant must admit culpability or acknowledge that he has a problem with the type of behavior underlying the crime to which he pleaded guilty, is a collateral consequence of the defendant's plea. The court was not obligated to inform the defendant of the rule of treatment at the plea hearing. Moreover, the defendant had fair notice to satisfy due process. The majority, however, reasons that there is a fundamental inconsistency between an *Alford* plea and a probation condition that requires an admission of guilt or acknowledgement of a problem with the type of behavior underlying the crime to which the defendant pleaded guilty. I conclude

that there is no inconsistency. An *Alford* plea operates as a plea of nolo contendere and does not contain an inherent promise that a defendant can maintain his innocence in fulfilling his probation. I would not create an exception to the general rule and require the trial court to inform a defendant at the plea hearing of a collateral consequence, specifically, that in the course of treatment necessary to fulfill the probation condition, the defendant might be required to admit culpability or to acknowledge that he has a problem with the type of behavior underlying the crime to which he pleaded guilty. Accordingly, I would affirm the judgment of the trial court.

For the foregoing reasons, I respectfully dissent.