# STATE OF CONNECTICUT *v.* WILLIAM FARADAY
## (SC 16827)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued December 4, 2003—officially released March 16, 2004

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Anne Mahoney*, assistant state's attorney, for the appellant (state).

*Trenton C. Haas*, with whom, on the brief, was *Tracey Lane Russo*, for the appellee (defendant).

*Opinion*

BORDEN, J. The state appeals, following our grant of certification, from the judgment of the Appellate Court reversing the judgment of the trial court revoking the defendant's probation. The state claims that the

Appellate Court improperly concluded that the defendant had not violated his probation. We reverse the judgment of the Appellate Court.

The defendant, William Faraday, pleaded guilty under the *Alford*[1] doctrine to the crimes of sexual assault in the third degree in violation of General Statutes § 53a-72a,[2] and risk of injury to a child in violation of General Statutes § 53-21.[3] In accordance with the plea, the trial

[1] *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] General Statutes § 53a-72a provides: "(a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself or a third person, or (2) engages in sexual intercourse with another person whom the actor knows to be related to him or her within any of the degrees of kindred specified in section 46b-21.

"(b) Sexual assault in the third degree is a class D felony or, if the victim of the offense is under sixteen years of age, a class C felony."

Although § 53a-72a has been amended since 1991 when the crimes here were first committed, the amendments are not relevant to this appeal. References to § 53a-72a in this opinion are to the current revision of the statute.

[3] General Statutes § 53-21 provides: "(a) Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, or (3) permanently transfers the legal or physical custody of a child under the age of sixteen years to another person for money or other valuable consideration or acquires or receives the legal or physical custody of a child under the age of sixteen years from another person upon payment of money or other valuable consideration to such other person or a third person, except in connection with an adoption proceeding that complies with the provisions of chapter 803, shall be guilty of a class C felony for a violation of subdivision (1) or (3) of this subsection and a class B felony for a violation of subdivision (2) of this subsection.

"(b) The act of a parent or agent leaving an infant thirty days or younger with a designated employee pursuant to section 17a-58 shall not constitute

court sentenced the defendant to a total term of twelve years imprisonment, execution suspended, and five years probation. Thereafter, the defendant was charged with violating two conditions of his probation. After a hearing, the trial court found that the defendant had violated both conditions of his probation as charged. Accordingly, the trial court revoked the defendant's probation, and ordered him to serve the twelve years imprisonment sentence originally imposed. The Appellate Court reversed the judgment of the trial court, concluding that the defendant had not violated either of the conditions of his probation. *State* v. *Faraday*, 69 Conn. App. 421, 437, 794 A.2d 1098 (2002). This certified appeal followed.[4]

The following facts, as set forth in the opinion of the Appellate Court, are not in dispute. "On July 31, 1998, the defendant pleaded guilty under the *Alford* doctrine . . . to sexual assault in the third degree in violation of . . . § 53a-72a and risk of injury to a child in violation of . . . § 53-21. The charges related to events that occurred in 1991 and 1992. Prior to the plea bargain, there had been a mistrial because the jury was unable to reach a unanimous verdict. The [trial] court, *Clifford, J.*, accepted the *Alford* plea, and the defendant was sentenced to a total of twelve years imprisonment, exe-

a violation of this section."

Although § 53-21 has been amended since 1991 when the crimes here were first committed, the amendments are not relevant to this appeal. References to § 53-21 in this opinion are to the current revision of the statute.

[4] We granted the state's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court properly conclude that General Statutes § 53a-32[a] was not applicable because it could not be applied retroactively to the defendant?"; and (2) "Did the Appellate Court properly conclude that the trial court improperly determined that the conditions of probation had been violated?" *State* v. *Faraday*, 261 Conn. 915, 915–16, 806 A.2d 1055 (2002). We note that this court's order granting the state's petition for certification to appeal incorrectly referred to General Statutes § 53a-32 rather than to § 53a-32a. The parties noticed the error and appropriately have referred to § 53a-32a in their briefs to this court.

cution suspended, and five years probation. The court imposed various conditions of probation.

"At the time of the sentencing, the defendant was living with a woman, Eileen Kennedy, and her son. The son was not involved in the criminal events for which the defendant was charged and was two and one-half years old at the time the defendant was sentenced. By the time of the revocation hearing, the defendant had married Kennedy.

"In October, 1999, the defendant was charged with violating two of the conditions of his probation. The application for the arrest warrant stated that he had violated the 'following conditions of his probation: 1. Sex offender treatment as deemed appropriate by [the office of] adult probation; 2. No unsupervised contact with any child under the age of [sixteen]. The supervisor cannot be someone [the] defendant is romantically involved with. The exception is a situation the defendant is presently in.'

"After the probation revocation hearing, conducted on February 3 and 4, 2000, the court, *Wollenberg, J.,* found that the defendant had violated the two conditions of probation, as charged. The court interpreted one condition of probation as prohibiting the defendant from contact with his stepson, even in the presence of his wife, unless she had been approved by the department of children and families (department) as a supervisor, and found that such unsupervised contact had occurred during the summer of 1999. The court did not specifically cite [General Statutes] § 53a-32a,[5] but found

[5] General Statutes § 53a-32a provides: "If a defendant who entered a plea of nolo contendere or a guilty plea under the Alford doctrine to a violation of subdivision (2) of section 53-21 of the general statutes in effect prior to October 1, 2000, subdivision (2) of subsection (a) of section 53-21 or section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b, and was ordered to undergo sexual offender treatment as a condition of probation, becomes ineligible for such treatment because of such defendant's refusal to acknowledge that such defendant committed the act or acts charged, such defendant shall be deemed to be in violation of the conditions of such defendant's

that the defendant also had violated the condition of probation requiring '[s]ex offender treatment as deemed appropriate by probation . . . .' [Specifically, the trial court found that the defendant was discharged from such treatment because of his failure to admit guilt of the underlying charges.] The court then concluded that the rehabilitative purposes of probation had been thwarted by the defendant's attitude and conduct, and revoked his probation, sentencing him to the twelve years imprisonment originally imposed." (Citation omitted.) Id., 422–24.

The Appellate Court reversed the judgment of the trial court, concluding that the defendant had not violated either of the conditions of his probation. Id., 437. With regard to the condition prohibiting unsupervised contact with a child less than sixteen years of age, the Appellate Court concluded that the plain language of this condition, as stated by the trial court, excepted the defendant's then present situation involving his girlfriend and her son. Id., 428–30. Thus, the Appellate Court concluded that the defendant's alleged contact with his girlfriend's son did not violate that condition of his probation. Id., 429. With regard to the condition requiring the defendant to undergo sex offender treatment, the Appellate Court concluded that § 53a-32a, which makes certain defendants ineligible for sex offender treatment unless they acknowledge guilt of their underlying crimes, could not be applied "retroactively" to the defendant because the statute became effective after he had committed the underlying crimes for which he was charged. Id., 432–33. In addition, the Appellate Court concluded that the defendant could not have been found to have violated the condition of his probation requiring sex offender treatment because, at

probation and be returned to court for proceedings in accordance with section 53a-32."

the time he entered his guilty plea under the *Alford* doctrine, the defendant did not have "prior fair warning" that he may be required to admit guilt as a component of such treatment. Id., 437. Additional facts will be presented as necessary.

On appeal to this court, the state claims that the Appellate Court improperly concluded that the defendant had not violated either of the conditions of his probation. We agree, and we conclude that the defendant violated both conditions of his probation as charged. In addition, we conclude that the trial court did not abuse its discretion when it revoked the defendant's probation and ordered him to serve the twelve years imprisonment sentence originally imposed. Accordingly, we reverse the judgment of the Appellate Court.

We first turn to a brief review of the principles relating to probation. "[P]robation is, first and foremost, a penal alternative to incarceration . . . . [Its] purpose . . . is to provide a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable. . . . [P]robationers . . . do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions. . . . These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." (Citations omitted; internal quotation marks omitted.) *State* v. *Misiorski*, 250 Conn. 280, 287–88, 738 A.2d 595 (1999).

"The success of probation as a correctional tool is in large part tied to the flexibility within which it is permitted to operate." (Internal quotation marks omitted.) Id., 287. In this regard, "modifications of probation routinely are left to the office of adult probation. When

the court imposes probation, a defendant thereby accepts the possibility that the terms of probation may be modified or enlarged in the future pursuant to [General Statutes] § 53a-30."[6] *State* v. *Smith*, 255 Conn. 830, 841, 769 A.2d 698 (2001). To this end, "probation officers

---

[6] General Statutes § 53a-30 provides: "(a) When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant: (1) Work faithfully at a suitable employment or faithfully pursue a course of study or of vocational training that will equip the defendant for suitable employment; (2) undergo medical or psychiatric treatment and remain in a specified institution, when required for that purpose; (3) support the defendant's dependents and meet other family obligations; (4) make restitution of the fruits of the defendant's offense or make restitution, in an amount the defendant can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner of performance; (5) if a minor, (A) reside with the minor's parents or in a suitable foster home, (B) attend school, and (C) contribute to the minor's own support in any home or foster home; (6) post a bond or other security for the performance of any or all conditions imposed; (7) refrain from violating any criminal law of the United States, this state or any other state; (8) if convicted of a misdemeanor or a felony, other than a capital felony, a class A felony or a violation of section 21a-278, 21a-278a, 53a-55, 53a-56, 53a-56b, 53a-57, 53a-58 or 53a-70b or any offense for which there is a mandatory minimum sentence which may not be suspended or reduced by the court, and any sentence of imprisonment is suspended, participate in an alternate incarceration program; (9) reside in a residential community center or halfway house approved by the Commissioner of Correction, and contribute to the cost incident to such residence; (10) participate in a program of community service labor in accordance with section 53a-39c; (11) participate in a program of community service in accordance with section 51-181c; (12) if convicted of a violation of subdivision (2) of subsection (a) of section 53-21, section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b, undergo specialized sexual offender treatment; (13) if convicted of a criminal offense against a victim who is a minor, a nonviolent sexual offense or a sexually violent offense, as defined in section 54-250, or of a felony that the court finds was committed for a sexual purpose, as provided in section 54-254, register such person's identifying factors, as defined in section 54-250, with the Commissioner of Public Safety when required pursuant to section 54-251, 54-252 or 54-253, as the case may be; (14) be subject to electronic monitoring; (15) if convicted of a violation of section 46a-58, 53-37a, 53a-181j, 53a-181k or 53a-181*l*, participate in an anti-bias crime education program; (16) satisfy any other conditions reasonably related to the defendant's rehabilitation. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any.

shall use all suitable methods to aid and encourage [a probationer] and to bring about improvement in his [or her] conduct and condition." (Internal quotation marks omitted.) *State* v. *Misiorski*, supra, 250 Conn. 288.

"The due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation. . . . Among other things, due process entitles a probationer to a final revocation hearing . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 229 Conn. 285, 294, 641 A.2d 370 (1994). "A revocation proceeding is held to determine whether the goals of rehabilitation thought to be served by probation have faltered, requiring an end to the conditional freedom obtained by a defendant at a sentencing that allowed him or her to serve less than

"(b) When a defendant has been sentenced to a period of probation, the Court Support Services Division may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) of this section which are not inconsistent with any condition actually imposed by the court.

"(c) At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any.

"(d) The period of participation in an alternate incarceration program, unless terminated sooner, shall not exceed the period of probation authorized by section 53a-29 or two years, whichever is less.

"(e) The court may require that the person subject to electronic monitoring subject to subsection (a) of this section pay directly to the electronic monitoring service provider a fee for the cost of such electronic monitoring services. If the court finds that the person subject to electronic monitoring is indigent and unable to pay the costs of electronic monitoring services, it shall waive such costs. Any contract entered into by the judicial branch and the electronic monitoring service provider shall include a provision stating that the total cost for electronic monitoring services shall not exceed five dollars per day. Such amount shall be indexed annually to reflect the rate of inflation."

a full sentence. . . . [T]he ultimate question [in the probation process is] whether the probationer is still a good risk . . . . This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public." (Citation omitted; internal quotation marks omitted.) *State* v. *Hill*, 256 Conn. 412, 427, 773 A.2d 931 (2001).

"On the other hand . . . a [probation] revocation proceeding . . . is not a criminal proceeding. . . . It therefore does not require all of the procedural components associated with an adversary criminal proceeding." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, supra, 229 Conn. 295. Accordingly, the state must prove each alleged violation of probation by a preponderance of the evidence at a revocation proceeding, in accordance with General Statutes § 53a-32[7] and Prac-

---

[7] General Statutes § 53a-32 provides: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. Whenever a defendant has, in the judgment of such defendant's probation officer, violated the conditions of such defendant's probation, the probation officer may, in lieu of having such defendant returned to court for proceedings in accordance with this section, place such defendant in the zero-tolerance drug supervision program established pursuant to section 53a-39d. Whenever a sexual offender, as defined in section 54-260, has violated the conditions of such person's probation by failing to notify such person's probation officer of any change of such person's residence address, as required by said section, such probation officer may notify any police officer that such person has, in such officer's judgment, violated the conditions of such person's probation and such notice shall be sufficient warrant for the police officer to arrest such person and return such person to the custody of the court or to any suitable detention facility designated by the court. Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving such other officer a written statement setting forth that the defendant has, in the judgment of

tice Book § 43-29.[8]

the probation officer, violated the conditions of the defendant's probation. Such written statement, delivered with the defendant by the arresting officer to the official in charge of any correctional center or other place of detention, shall be sufficient warrant for the detention of the defendant. After making such an arrest, such probation officer shall present to the detaining authorities a similar statement of the circumstances of violation. Provisions regarding release on bail of persons charged with a crime shall be applicable to any defendant arrested under the provisions of this section. Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge, shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in such defendant's own behalf.

"(b) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

[8] Practice Book § 43-29 provides: "In cases where the revocation of probation is based upon a conviction for a new offense and the defendant is before the court or is being held in custody pursuant to that conviction, the revocation proceeding may be initiated by a motion to the court by a probation officer and a copy thereof shall be delivered personally to the defendant. All other proceedings for revocation of probation shall be initiated by an arrest warrant supported by an affidavit or by testimony under oath showing probable cause to believe that the defendant has violated any of the conditions of the defendant's probation or his or her conditional discharge or by a written notice to appear to answer to the charge of such violation, which notice, signed by a judge of the superior court, shall be personally served upon the defendant by a probation officer and contain a statement of the alleged violation. All proceedings thereafter shall be in accordance with the

We now turn to the standard that governs our review of a revocation of probation proceeding. "A revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. If a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served. . . . Since there are two distinct components of the revocation hearing, our standard of review differs depending on which part of the hearing we are reviewing. . . .

"A trial court initially makes a factual determination of whether a condition of probation has been violated. In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling. . . .

"The standard of review of the trial court's decision at the sentencing phase of the revocation of probation hearing is whether the trial court exercised its discretion properly by reinstating the original sentence and

provisions of Sections 3-6, 3-9 and 37-1 through 38-23. At the revocation hearing, the prosecuting authority and the defendant may offer evidence and cross-examine witnesses. If the defendant admits the violation or the judicial authority finds from the evidence that the defendant committed the violation, the judicial authority may make any disposition authorized by law. The filing of a motion to revoke probation under this section shall interrupt the period of the sentence as of the date of filing until a final determination as to revocation has been made by the judicial authority."

ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Hill*, supra, 256 Conn. 425–26.

In the present case, the trial revoked the defendant's probation on the basis of its determination that the defendant had violated two conditions of his probation. Accordingly, we will first address whether the trial court findings, as to each alleged violation, were clearly erroneous. Next, we will address whether the trial court abused its discretion when it revoked the defendant's probation.

I

THE CONDITION PROHIBITING UNSUPERVISED CONTACT

The state claims that the Appellate Court improperly concluded that the defendant had not violated the condition of his probation prohibiting unsupervised contact with any child less than sixteen years of age. We agree.

The record reveals the following additional facts, which are necessary to resolve this issue. As previously discussed, at the time of the defendant's plea hearing, he was living with Kennedy and her son. At the beginning of the hearing, the state first recited the special conditions of probation to the trial court, stating, in relevant part: "[N]o unsupervised contact with any minor under the age of sixteen, and the supervisor cannot be someone [with] whom the defendant has a romantic interest in, and sex offender counseling as deemed appropriate by [the office of adult probation]." After a short recess, the state repeated the special conditions to the court,

stating, in relevant part: "[N]o unsupervised contact with children under the age of sixteen and the supervisor cannot be someone with whom he has a romantic relationship with the exception of the child that he's currently living with, that if [the department] finds that that's appropriate the state will not object to that."

The following colloquy then ensued between the trial court and the assistant state's attorney:

"The Court: So it's no unsupervised contact with a child under the age of sixteen. The supervisor cannot be somebody who he is romantically involved with, but his present situation is an exception to that.

"[Assistant State's Attorney]: As long as the [d]epartment . . . finds that that's an appropriate level of contact that he has with that child.

"The Court: So he can stay with that relationship unless [the department] says otherwise—

"[Assistant State's Attorney]: Yes."

After the trial court canvassed the defendant regarding his plea, the court stated the conditions of the defendant's probation as follows: "The conditions on the probation, besides any usual conditions, [are] no contact, obviously directly or indirectly, with the victim or the victim's family; sex offender treatment as deemed appropriate by [p]robation; no unsupervised contact with any child under the age of sixteen; the supervisor cannot be somebody that you are romantically involved with; the only exception to that condition is your current situation right now with a woman and a child. Obviously, however, though, if [the department] gets involved and does not feel that is appropriate that you're going to be there, then that's going to be the end of that."

The written conditions of probation given to the defendant and signed by him on July 31, 1998, were as

follows: "No contact directly [or] indirectly [with the] victim or victim's family. Sex offender treatment deemed appropriate by [probation]. No unsupervised contact [with] any child under the age of [sixteen]. The supervisor *cannot* be someone [that the defendant] is romantically involved with. Exception is the situation [the defendant] is presently in (girlfriend with child) unless [the department] is not satisfied [with the] arrangement." (Emphasis in original.)

The defendant first met with his probation officer, Timothy Kane, on October 27, 1998, whereupon the two reviewed the conditions of the defendant's probation. At this meeting, Kane explained to the defendant that Kennedy was not yet an approved supervisor, and that Kennedy may act as a supervisor only if the department finds that it would be appropriate for the defendant to have contact with her son.

On October 29, 1998, the defendant was referred to The Connection, Inc. (Special Services), a center for the treatment of sexual offenders, where he was to receive counseling. On December 1, 1998, the department notified Kane that it would be investigating Kennedy's relationship with the defendant. On December 14, 1998, the defendant signed his treatment contract with Special Services. The contract indicated that, if the defendant were to have supervised contact with any minor, the supervisor must be someone first approved by Special Services and his probation officer.

On December 23, 1998, Kane advised Maria Armstrong, a caseworker for the department, that, in order for Kennedy to become an approved supervisor for the defendant, she had to attend a class offered by Special Services, as well as meet with a therapist and a probation officer. Kane later advised the defendant of these requirements. On January 28, 1999, Kennedy entered into a treatment plan with the department, which pro-

vided that she would become involved with the program offered by Special Services in order to become an approved supervisor. In this regard, Special Services made arrangements with Kennedy to attend two meetings, but Kennedy did not attend either meeting. Kennedy never took the class required in order to become a supervisor for the defendant.

On May 7, 1999, Brenda Colon, a caseworker for the department, was assigned to monitor and make certain that the defendant was not having contact with Kennedy's son. On July 13, 1999, Kennedy entered into and signed a service agreement with the department. The agreement provided, among other things, that Kennedy: (1) would "not allow any unsupervised contact with [the defendant] and [her son]"; and (2) would "enroll in a training group that will focus on the supervision of visitation with sexual offenders."

On September 7, 1999, Kane and Colon visited Kennedy's home. The two met privately with Kennedy's son in his bedroom. Kennedy's son was born on January 13, 1996, and was thus between the ages of three and four at that time. During the visit, Kane noticed a photograph of the defendant with Kennedy's son at the beach. Kennedy's son indicated that the photograph had been taken during the summer, after the defendant and Kennedy had married. In addition, Kane indicated that, on the basis of the appearance of Kennedy's son in the photograph, it appeared that the photograph had been taken during the previous summer. On October 13, 1999, the defendant was charged with violating his probation.

In the revocation proceeding, the trial court heard testimony from Kane, Colon, and an employee from Special Services. Consistent with the witnesses' testimony, the trial court found that it had been explained to the defendant and Kennedy that the defendant was not to have unsupervised contact with Kennedy's son.

The trial court also found that Kennedy could not properly be a supervisor for the defendant unless she first completed classes and was approved by the department. The trial court also found that the department never had approved Kennedy as a supervisor for the defendant. Accordingly, the trial court found that the defendant had violated his probation because he had unsupervised contact with a child less than sixteen years of age.

The Appellate Court disagreed with the trial court's interpretation of the condition prohibiting unsupervised contact with a minor. Specifically, the Appellate Court determined that the plain language of the condition indicated that Kennedy could properly supervise the defendant *unless* there was some reason for the department to become involved. *State* v. *Faraday*, supra, 69 Conn. App. 429. In other words, according to the Appellate Court, Kennedy could properly supervise the defendant, without obtaining special training, until some "wrongdoing" occurred that would trigger the department's involvement. Id., 430. Thus, the Appellate Court concluded that the condition, as enforced by the office of adult probation, was inconsistent with the condition as imposed by the trial court, and accordingly, the defendant had not violated that condition. Id.

The state claims that the Appellate Court improperly interpreted the condition of the defendant's probation prohibiting unsupervised contact with a child less than sixteen years of age. Specifically, the state argues, the language of the condition, as recited by the trial court, indicates that the defendant's contact with Kennedy's son was contingent upon the department first approving of the arrangement. We agree.

At the outset, we note that, although our review of the trial court's finding that a particular condition of probation had been violated concerns whether that find-

ing was clearly erroneous; *State* v. *Hill*, supra, 256 Conn. 425; interpreting the meaning of a particular condition presents a question of law, over which our review is de novo. *State* v. *Reilly*, 60 Conn. App. 716, 727–28, 760 A.2d 1001 (2000) ("[T]he interpretation of a probation condition and whether it affords a probationer fair warning of the conduct proscribed thereby are essentially matters of law and, therefore, give rise to de novo review on appeal. *United States* v. *Gallo*, 20 F.3d 7, 11 (1st Cir. 1994)." [Internal quotation marks omitted.]).

The special conditions of probation, as stated by the trial court, were as follows: "The conditions on the probation, besides any usual conditions, [are] . . . no unsupervised contact with any child under the age of sixteen; the supervisor cannot be somebody that you are romantically involved with; the only exception to that condition is your current situation right now with a woman and a child. Obviously, however, though, *if* [the department] gets involved and does not feel that is appropriate that you're going to be there, then that's going to be the end of that." (Emphasis added.) Although the trial court created an exception to the condition prohibiting unsupervised contact, namely, that the defendant could, for the time being, remain living with Kennedy and her son, that exception expressly was conditioned on the department's approval of the situation. Specifically, the language "if [the department] gets involved" indicated that the department was not yet involved, but that if it did become involved, it could alter the arrangement at its discretion. In the present case, the department *did* become involved because it was concerned that Kennedy was living with a convicted sex offender. Colon testified that the department had not felt that Kennedy was an appropriate supervisor for the defendant, not only because she had not attended the required classes, but also because she had refused to acknowledge the

defendant's involvement in the crimes for which he had been convicted. Accordingly, when the department became involved and specifically disapproved of the defendant having contact with Kennedy's son without *an approved* supervisor, the defendant was not permitted to have such contact.

Furthermore, the record reflects that that is how the defendant and Kennedy understood the arrangement. Kane indicated that he had told the defendant several times that Kennedy was not yet an approved supervisor. In this regard, on December 14, 1998, the defendant signed an agreement with Special Services indicating that, if he were to have contact with minors, the supervisor must first be approved by Special Services and the office of adult probation. In addition, the fact that Kennedy was set to enroll in classes to become a supervisor belies the defendant's contention that it was not necessary for Kennedy to be approved in order to be a supervisor. Indeed, on January 28, 1999, Kennedy entered into a treatment plan with the department, whereby she agreed to become involved with the sex offender supervisor's program. After she failed to attend her scheduled meetings, Kennedy entered into another treatment plan on July 13, 1999, in which she agreed not to allow unsupervised contact with her son and the defendant, and also that she would enroll in classes related to the supervision of the defendant. If the defendant's living with Kennedy and her son was unconditionally excepted from the condition prohibiting unsupervised contact, as the defendant maintains, then it would not have been necessary for Kennedy to enroll in classes to become a supervisor.

Finally, even interpreting the condition, as the Appellate Court did, so as to require an event to trigger the department's involvement, the mere fact that the defendant was a convicted sex offender provided such a basis for the department's involvement. The Appellate Court

concluded that the condition could not be modified to preclude Kennedy as an approved supervisor unless some "wrongdoing" necessitated the department's involvement. *State* v. *Faraday*, supra, 69 Conn. App. 430. This interpretation, however, added a term that was not present in the condition as imposed by the trial court, namely, that some sort of wrongdoing must occur in order for the department to become involved. The condition merely required that, "if the department gets involved," it could terminate the defendant's living situation. Indeed, Colon testified that she would not have allowed a convicted sex offender, who had not yet completed sex offender treatment, to have contact with a preschool child. Thus, the fact that Kennedy was living with a convicted sex offender, in the department's view, necessitated its involvement, which is consistent with the plain language of the condition.

Accordingly, we conclude that the condition prohibiting unsupervised contact, as imposed by the trial court, excepted the defendant's current living situation with Kennedy *to the extent that* the department approved of the situation. With that conclusion in mind, we now turn to whether the trial court's finding that the defendant violated that condition was clearly erroneous.

Colon testified that Kennedy was not an approved supervisor for the defendant. In addition, both Kane and Colon testified that the defendant had had contact with Kennedy's son, who was under the age of sixteen, sometime during the summer of 1999. Thus, there was evidence on which the trial court reasonably could have inferred that the defendant had had unsupervised contact with a child less than sixteen years of age. Accordingly, we cannot say that the trial court's determination that the defendant had had unsupervised contact with a child less than sixteen years of age was clearly erroneous.

## II

## THE CONDITION REQUIRING SEX OFFENDER TREATMENT

The state also claims that the Appellate Court improperly concluded that: (1) § 53a-32a could not have been applied "retroactively" to the defendant; and (2) the trial court was required to notify the defendant, upon entering his guilty plea under the *Alford* doctrine, that not acknowledging that he had committed the acts for which he was charged could result in a violation of his probation. We agree with both contentions, and we address each in turn.

The following additional facts, as set forth in the opinion of the Appellate Court, are necessary to resolve this issue. "The second condition of probation that the [trial] court . . . found to have been violated was that the defendant receive sex offender treatment. The defendant was discharged from such treatment because of his failure to admit guilt to the underlying charges. Section 53a-32a is expressly applicable to the charges for which the defendant pleaded guilty under the *Alford* doctrine and provides that failure to complete the sex offender treatment program by refusing to admit guilt is deemed to be a violation of a condition of probation.

"Nothing in the record indicates that the defendant at anytime was aware of, or was told of, the existence of the statute. The defendant was told, however, on July 28, 1999, one year after sentencing and the imposition of the condition, and approximately six months after treatment began by [Special Services], that if he continued to deny his guilt, he would be terminated from the treatment program and that his unsuccessful discharge from counseling would result in a violation of his probation. In addition, and specifically, the defendant was told that he must admit guilt or submit to a physiological detection test. . . .

"[Section] 53a-32a became effective on October 1, 1997. [See Public Acts 1997, No. 97-151, § 2.] Ten months later, July 31, 1998, the defendant pleaded guilty under the *Alford* doctrine to crimes allegedly committed in 1991 and 1992." *State* v. *Faraday*, supra, 69 Conn. App. 430–32.

## A

The state claims that the Appellate Court improperly concluded that § 53a-32a could not have been applied to the defendant. Specifically, the state contends that § 53a-32a was not applied "retroactively" to the defendant because the statute was in effect at the time the defendant entered his guilty plea under the *Alford* doctrine. We agree.

"The ex post facto prohibition[9] forbids the Congress and the States to enact any law [that] imposes a punishment for an act [that] was not punishable at the time [that] it was committed; or imposes additional punishment to that then prescribed." (Internal quotation marks omitted.) *Weaver* v. *Graham*, 450 U.S. 24, 28, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981); see *State* v. *Kelly*, 256 Conn. 23, 88, 770 A.2d 908 (2001). "To fall within the ex post facto prohibition, a law must be retrospective— that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it . . . by altering the definition of criminal conduct or increasing the punishment for the crime . . . ." (Citation omitted; internal quotation marks omitted.) *Lynce* v. *Mathis*, 519 U.S. 433, 441, 117 S. Ct. 891, 137 L. Ed. 2d 63 (1997); *State* v. *Parra*, 251 Conn. 617, 626 n.7, 741 A.2d 902 (1999).

---

[9] U.S. Const., art. I, § 9, cl. 3 (prohibiting Congress from passing ex post facto laws); U.S. Const., art. I, § 10, cl. 1 (prohibiting states from passing ex post facto laws). "So much importance did the [C]onvention attach to [the ex post facto prohibition], that it is found twice in the Constitution." (Internal quotation marks omitted.) *Weaver* v. *Graham*, 450 U.S. 24, 28 n.8, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981).

This court, as well as the United States Supreme Court, recognizes a presumption against the retrospective application of statutes affecting substantive rights. See *Immigration & Naturalization Service* v. *St. Cyr*, 533 U.S. 289, 315, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001); *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 820, 786 A.2d 1091 (2002); see also General Statutes § 55-3.[10] "[This] presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal." (Internal quotation marks omitted.) *Immigration & Naturalization Service* v. *St. Cyr*, supra, 316. "The inquiry into whether a statute operates retroactively demands a common-sense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment. . . . A statute has retroactive effect when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past . . . . [T]he judgment whether a particular statute acts retroactively should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." (Citations omitted; internal quotation marks omitted.) Id., 321.

---

[10] General Statutes § 55-3 provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect."

Accordingly, retroactive application of a law occurs only if the new or revised law was not yet in effect on the date that the relevant events underlying its application occurred. In the present case, because the conduct for which the defendant was charged, namely, violating the condition of his probation requiring him to undergo sex offender treatment, occurred after § 53a-32a became effective, and because § 53a-32a was in effect when the defendant entered his plea for the charges that gave rise to his probation, we conclude that § 53a-32a was not applied retroactively to the defendant.[11]

A brief reiteration of the relevant dates underlying this appeal is helpful to explicate this conclusion. The defendant was charged with sexual assault in the third degree and risk of injury to a child for events that allegedly had occurred in 1991 and 1992. The defendant eventually pleaded guilty under the *Alford* doctrine to those charges on July 31, 1998. Section 53a-32a, however, became effective on October 1, 1997. Thus, the statute was in effect at the time the defendant entered his plea and agreed to undergo sex offender treatment as a condition of his probation. The defendant was discharged from sex offender treatment on August 6, 1999, for his continued refusal to acknowledge his culpability for the charges for which he was originally sentenced.

The crux of the defendant's claim is that, when he entered his guilty plea under the *Alford* doctrine, he did not have fair warning that a failure to admit guilt could result in a violation of his probation. Even if we were to assume that the defendant was entitled to such

---

[11] This conclusion makes it unnecessary for us to consider whether § 53a-32a is substantive or procedural. See, e.g., *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 820, 786 A.2d 1091 (2002) (whether statute applies retrospectively depends on whether it is substantive or procedural and intention of legislature); *In re Daniel H.*, 237 Conn. 364, 376, 678 A.2d 462 (1996) (same).

a warning; see part II B of this opinion; § 53a-32a had been effective for approximately ten months prior to the date on which the defendant entered his plea. Thus, § 53a-32a cannot be said to have been applied retroactively to the defendant.

Nevertheless, the defendant argues that the triggering date to determine whether § 53a-32a was applied retrospectively should be the date on which he committed the alleged sexual offenses, namely, sometime in 1991 and 1992. Specifically, the defendant relies on *In re Daniel H.*, 237 Conn. 364, 377, 678 A.2d 462 (1996), in which we stated: "In criminal cases, to determine whether a change in the law applies to a defendant, we generally have applied the law in existence on the date of the offense, regardless of its procedural or substantive nature." Thus, the defendant contends, because § 53a-32a became effective well after he allegedly had committed the offenses for which he was charged, applying the statute to him constitutes an improper retrospective application of the law. This contention has no merit.

The defendant's assertion rests on a misunderstanding of the offense with which he was charged in the present case. For the purposes of this issue, the defendant was not charged with the sexual offenses that he allegedly committed in 1991 and 1992; rather, the defendant was charged with violating his probation. Thus, the proper triggering date under our language in *In re Daniel H.*, supra, 237 Conn. 377, would be the date on which the defendant committed the acts that led to his discharge from sex offender treatment, not the alleged sexual misconduct that led to his pleading guilty under the *Alford* doctrine.

Moreover, the present case does not present an appropriate situation in which to apply a traditional ex post facto analysis, because that analysis simply does

not apply to a condition of probation enacted or modified subsequent to the date of the underlying substantive criminal conduct. As previously discussed, the ex post facto prohibition forbids the application of any law that either: (1) imposes a punishment for an act that was not punishable at the time it was committed; or (2) imposes additional punishment for an act that was already committed. *Weaver* v. *Graham*, supra, 450 U.S. 28; *State* v. *Kelly*, supra, 256 Conn. 88. In the present case, § 53a-32a played no part in "impos[ing] a punishment" to the defendant. *Weaver* v. *Graham*, supra, 28. "Revocation hearings are not concerned with punishment or retribution." *State* v. *Smith*, 207 Conn. 152, 177, 540 A.2d 679 (1988). "A revocation proceeding is held to determine whether the goals of rehabilitation thought to be served by probation have faltered, requiring an end to the conditional freedom obtained by a defendant at a sentencing that allowed him or her to serve less than a full sentence." (Internal quotation marks omitted.) *State* v. *Hill*, supra, 256 Conn. 427. "The ends of probation revocation are thus distinct from the punitive functions of the criminal law and a number of considerations relevant to revocation include factors that are irrelevant to a criminal prosecution. . . . The element of 'punishment' in probation revocation of [the] defendant is attributable to the crime for which he was originally convicted and sentenced. Thus, any sentence [the] defendant had to serve as the result of the violation of the special condition was 'punishment' for the crime of which he had originally been convicted. Revocation is a continuing consequence of the original conviction from which probation was granted."[12] (Citation omitted.) *State* v. *Smith*, supra, 207 Conn. 177–78; see *State* v. *Hill*, supra, 427.

---

[12] That is not to say that there can never be "punishment" in the probation context implicating the ex post facto prohibition. See *State* v. *Kelly*, supra, 256 Conn. 88–89 (statutory amendment, which required mandatory minimum period of probation for certain crimes, could not be applied retroactively); see also General Statutes § 53a-29 (e).

Furthermore, conditions of probation are necessarily flexible, and may be amended by the office of adult probation or the court to meet the current situation, as it presents itself. *State* v. *Smith*, supra, 255 Conn. 841; see General Statutes § 53a-30. Thus, it stretches the ex post facto prohibition beyond its proper boundaries to suggest, as the defendant's argument does, that only those conditions of probation specifically mentioned in the statutes at the time of the underlying conduct may ever be imposed. The ex post facto clause does not freeze all conditions of probation at the time of the underlying crime. Insofar as the defendant's argument relates to the ex post facto prohibition, it suffices to say that it is absurd to think that prospective criminals would shape their criminal conduct based on the expectation that their eventual plea bargains might result in desirous conditions of probation. Cf. *State* v. *Smith*, supra, 207 Conn. 165 ("there is no right to be granted probation").

B

The state also claims that the Appellate Court improperly concluded that the trial court was required to notify the defendant, upon entering his guilty plea under the *Alford* doctrine, that a failure to acknowledge that he committed the acts with which he was charged could result in a violation of his probation. We agree.

We first reiterate the law governing guilty pleas. "It is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury. . . . In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers." (Citations omitted; internal quotation marks omit-

ted.) *State* v. *Andrews*, 253 Conn. 497, 502–503, 752 A.2d 49 (2000).

"The *Boykin*[13] constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book §§ [39-19 and 39-20].[14] . . . Those rules provide that the trial court must not accept a guilty plea without first addressing the defendant personally in open court and determining that the defendant fully understands the items enumerated in § 39-19, and that the plea is made voluntarily pursuant to § 39-20. There is no requirement, however, that the defendant be advised of every possible consequence of such a plea. . . . Although a defendant must be aware of the direct consequences of a plea, the scope of direct consequences is very narrow. . . . In Connecticut, the direct consequences of a defendant's plea include only

---

[13] *Boykin* v. *Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

[14] Practice Book § 39-19 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

Practice Book § 39-20 provides: "The judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his or her counsel."

the mandatory minimum and maximum possible sentences; Practice Book § [39-19 (2) and (4)]; the maximum possible consecutive sentence; Practice Book § [39-19 (4)]; the possibility of additional punishment imposed because of previous conviction(s); Practice Book § [39-19 (4)]; and the fact that the particular offense does not permit a sentence to be suspended. Practice Book § [39-19 (3)] . . . . The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense." (Citations omitted; internal quotation marks omitted.) *State* v. *Andrews,* supra, 253 Conn. 504–505.

"Although [p]robation is the product of statute . . . modifications of probation routinely are left to the office of adult probation. When the court imposes probation, a defendant thereby accepts the possibility that the terms of probation may be modified or enlarged in the future pursuant to § 53a-30." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith,* supra, 255 Conn. 840–41.[15] Finally, the "due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation. *Black* v. *Romano,* 471 U.S. 606, 610, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis,* supra, 229 Conn. 294. In this regard, the Appellate Court has stated: "Where noncriminal activity forms the basis for the revocation of probation . . . due process mandates that the [probationer] cannot be subject[ed] to a forfeiture of his liberty for those acts unless he is given prior

---

[15] In *State* v. *Smith,* supra, 255 Conn. 842–43, we held that it was not a due process violation when the office of adult probation modified the terms of the defendant's probation by requiring him to undergo sexual offender treatment.

fair warning." (Internal quotation marks omitted.) *State* v. *Reilly*, supra, 60 Conn. App. 729.

With those principles in mind, we conclude that the trial court was not required to notify the defendant, upon entering his plea, that a failure to acknowledge guilt could result in a violation of the condition of his probation requiring sex offender treatment. First, the conduct proscribed by a particular condition of probation is not a "direct consequence" of the plea. *State* v. *Andrews*, supra, 253 Conn. 504. In the present case, the defendant does not dispute that the trial court stated to him, upon entering his plea, that he was to undergo sex offender treatment as a condition of his probation. At that point, it was not incumbent upon the trial court also to list all the potential conduct that could result in a discharge from that program. Furthermore, because the office of adult probation is free to modify the terms of the defendant's probation at any time; *State* v. *Smith*, supra, 255 Conn. 841; it is unrealistic to expect the court to canvass a defendant regarding the conduct necessary to comply with those terms. Finally, § 53a-32a was in effect at the time the defendant entered his plea, which explicitly provided that a discharge from sex offender treatment for a failure to acknowledge guilt will automatically trigger a probation revocation proceeding.[16] This belies the defendant's contention that he was without knowledge, when he entered his plea, that his failure

[16] Section 53a-32a was enacted; see Public Acts 1997, No. 97-151, § 2; to correct a "loophole," and was passed in response to the case of a convicted sex offender, Patrick Slater, who was discharged from sex offender treatment for his failure to admit guilt. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1997 Sess., pp. 630–33. Slater, who was convicted following a plea of nolo contendere, went unsupervised for two years following his discharge from sex offender treatment, and was later accused of reoffending. Id. Prior to the enactment of § 53a-32a, it was at the discretion of the office of adult probation to determine whether a discharge from the program warranted a revocation proceeding, whereas § 53a-32a provides that a discharge from sex offender treatment automatically results in a revocation proceeding.

to acknowledge the commission of the charged crimes would result in a violation of probation.

Nevertheless, the defendant argues that the trial court could not revoke his probation based on his failure to admit guilt because such a requirement was inconsistent with his guilty plea under the *Alford* doctrine. We are not persuaded.

The defendant's contention fails because he misconstrues the import of a guilty plea under the *Alford* doctrine. In support of his contention, the defendant cites cases from other jurisdictions that have concluded that a defendant, who enters a guilty plea under the *Alford* doctrine, cannot be deemed to have violated his probation for a failure to admit guilt unless he specifically was informed during the plea canvass that such conduct was proscribed. See, e.g., *People* v. *Walters*, 164 Misc. 2d 986, 988–89, 627 N.Y.S.2d 289 (1995); *State* v. *Birchler*, Ohio Court of Appeals, Docket No. 00AP-311 (October 5, 2000), 2000 Ohio App. Lexis 4622, *3. Those decisions, however, seem to be of the view that a guilty plea under the *Alford* doctrine carries greater constitutional significance than a standard guilty plea. Without belaboring the point, it suffices to say that we agree with those decisions that have held otherwise; see, e.g., *People* v. *Birdsong*, 958 P.2d 1124, 1127 (Colo. 1998); *State* v. *Jones*, 129 Idaho 471, 474, 926 P.2d 1318 (App. 1996); *State* v. *Alston*, 139 N.C. App. 787, 793, 534 S.E.2d 666 (2000); and we conclude that a guilty plea under the *Alford* doctrine does not carry any special significance in this area.

"Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished *as if he were guilty* to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant

does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless."[17] (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Daniels*, 248 Conn. 64, 66–67 n.2, 726 A.2d 520 (1999). The entry of a guilty plea under the *Alford* doctrine carries the same consequences as a standard plea of guilty. By entering such a plea, a defendant may be able to avoid formally admitting guilt at the time of sentencing, but he nonetheless consents to being treated as if he were guilty with no assurances to the contrary. See, e.g., *People* v. *Birdsong*, supra, 958 P.2d 1130 ("[t]here is nothing inherent in an *Alford* plea that gives the defendant any rights, or promises any limitations, with respect to the punishment imposed after the conviction"); *State* v. *Alston*, supra, 139 N.C. App. 793 (*Alford* plea not infused with any special promises).

In the present case, the trial court stated to the defendant at the plea hearing: "And you plead guilty under the *Alford* doctrine. That means you plead guilty but you don't agree necessarily with everything that the state claims that you did or what they claim they could prove at trial. But you would rather plead guilty rather than run the risk of having another trial. Is that correct?" To which the defendant replied, "Correct." The trial court did not, in any way, indicate that the defendant could unconditionally maintain his innocence for any and all purposes. In addition, the defendant's counsel

---

[17] "A guilty plea under the *Alford* doctrine is . . . the functional equivalent [to an unconditional] plea of nolo contendere"; (citations omitted) *State* v. *Palmer*, 196 Conn. 157, 169 n.3, 491 A.2d 1075 (1985); which itself "has the same legal effect as a plea of guilty on all further proceedings within the indictment. . . . The only practical difference is that the plea of nolo contendere may not be used against the defendant as an admission in a subsequent criminal or civil case." (Citations omitted; internal quotation marks omitted.) *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 49, 757 A.2d 501 (2000).

stated that the defendant was "trying to take advantage of a plea bargain in order [to] . . . get on with his life." Accordingly, we cannot say that the defendant did not understand his plea, nor can we say that the trial court's canvass was defective in that regard. The defendant is free to maintain the innocence associated with his plea; in order to maintain the "conditional liberty created by probation"; *State* v. *Davis*, supra, 229 Conn. 294; however, he was required to comply with its conditions.

## C

We now turn to whether the trial court's finding that the defendant violated the condition of his probation requiring him to undergo sex offender treatment was clearly erroneous. In the present case, the defendant was required to undergo sex offender treatment as a condition of his probation. The defendant does not dispute, as a factual matter, that he refused to admit guilt in conjunction with his sex offender treatment; nor does he dispute that he was discharged from such treatment. Accordingly, having concluded that § 53a-32a was properly applied to the defendant, we conclude that the trial court's finding that the defendant violated the condition of his probation requiring him to undergo sex offender treatment was not clearly erroneous.

## III

## REVOCATION OF PROBATION

Finally, we turn to whether the trial court abused its discretion by revoking the defendant's probation and reinstating his original sentence. As previously discussed, the trial court found that the defendant violated both conditions of his probation as charged. On the basis of the evidence before it, the court found that the defendant expressed an unwillingness to comply with the terms of his probation, and as a result, the rehabilitative purposes of probation had been "thwarted through

[the defendant's] attitude and conduct." The court noted that the defendant, having had his entire sentence suspended, was given "a real break" and an opportunity that is not always given to defendants. In addition, the trial court heard testimony that the defendant's refusal to accept responsibility for his actions presented an obstacle to his effective treatment as a convicted sex offender. In this regard, the trial court found that the beneficial purposes of the defendant's probation were no longer being served. The court also noted the important state interest of protecting the public from sex offenders, and how that topic has taken on an increased importance in recent years.[18] Finally, the court noted that it compared the defendant's liberty interest with the need to protect the public. On the basis of the foregoing, and in light of the fact that probation attempts to balance a defendant's rehabilitation with the public's safety, we cannot say that the trial court abused its discretion when it revoked the defendant's probation and ordered him to serve the twelve years imprisonment sentence originally imposed.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

---

[18] For example, the United States Supreme Court has noted the importance of treating sex offenders because untreated sex offenders present a high risk of reoffending. *McKune* v. *Lile*, 536 U.S. 24, 32, 122 S. Ct. 2017, 153 L.

Ed. 2d 47 (2002) (upholding Kansas' rehabilitation scheme in which incarcerated sex offenders are required to admit guilt as part of rehabilitation).