STATE OF CONNECTICUT *v.* ROY D.[1]
(AC 26218)

Bishop, DiPentima and Foti, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued March 27—officially released May 30, 2006

*Michael Zariphes*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Elizabeth C. Leaming*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Roy D., appeals from the judgments of the trial court revoking his probation pursuant to General Statutes § 53a-32. On appeal, the defendant claims that (1) the court imposed an unauthorized condition of probation and (2) he did not have notice that failure to admit to his offenses while undergoing sex offender treatment could lead to the revocation of his probation. We affirm the judgments of the trial court.

The following facts are relevant to our consideration of the defendant's appeal. On October 11, 2001, the defendant pleaded guilty under the *Alford* doctrine[2] to two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1). The defendant was sentenced, pursuant to the plea agreement, to ten years imprisonment, execution suspended after three years, followed by five years of probation with terms and conditions to be set forth by the court. As one of the special conditions of probation, the defendant was ordered to "be evaluated for and, if recommended by the evaluator and probation, enrolled in and to successfully complete a sex offender treatment program." The

---

[2] "Under *North Carolina* v. *Alford*, [400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)], a criminal defendant is not required to admit his guilt, but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Wheatland*, 93 Conn. App. 232, 234 n.1, 888 A.2d 1098, cert. denied, 277 Conn. 919, 895 A.2d 793 (2006).

court also ordered that "adult probation is authorized to impose any additional conditions of probation deemed necessary for the protection of the public and the rehabilitation of the offender."

The defendant was released from prison on March 7, 2003, and probation supervision commenced on that date. Prior to his release from prison, a probation officer explained to the defendant, and the defendant signed a copy of, the conditions of his probation, which included the condition of sex offender treatment. Subsequent to his release, the defendant met with another probation officer, who again explained the conditions of his probation, and the defendant signed a copy of the same conditions.

On May 6, 2003, the agency that was under contract with the office of adult probation to provide the defendant's therapy indicated that he would be required to admit his misconduct in order to complete sex offender treatment successfully. The defendant was advised by the program leader that failure to admit his crimes during therapy would result in unsatisfactory sex offender treatment, discharge from the program and the initiation of probation violation proceedings. The defendant signed a treatment contract acknowledging that violating any of the conditions of the contract would result in unsuccessful treatment and discharge from the program. The defendant also signed a copy of his treatment goals and discharge criteria, which stated that his first treatment goal was "admitting to your offense." He was advised that at the end of six months, his continued denial would result in his discharge from the program and probation revocation proceedings. The defendant was also told by his probation officer that his probation would be violated if he failed to complete the treatment program successfully. The defendant was offered the opportunity to take a polygraph test relating to the basis of his denial and was

told that if he passed the polygraph test, he would be discharged from the program with no malice, meaning that he would not be deemed unsuccessful and, therefore, would not be in violation of his probation. The defendant declined that offer.[3]

In January, 2004, the defendant was discharged from the sex offender treatment program for unsuccessful treatment as a result of his continued denial of his crimes. On February 5, 2004, the defendant's probation officer applied for an arrest warrant seeking to revoke the defendant's probation as a result of his failure to complete a sex offender treatment program successfully. The court found that the defendant had failed to comply with this condition of his probation, revoked his probation and sentenced him to serve five years of the original sentence.[4] This appeal followed.

I

, The defendant first claims that because General Statutes § 53a-30 (a) (12)[5] does not include § 53-21 (a) (1) as an enumerated offense for which express authority is given to the court to impose specialized sex offender

---

[3] On June 30, 2003, the defendant filed a motion to modify the conditions of his probation, asking that he not be required to admit to the crimes to which he pleaded guilty as a condition of his sex offender treatment. The court denied the defendant's motion.

[4] The court found that the defendant violated his probation in failing to successfully complete sex offender treatment and in changing his residence without approval from his probation officer. Because we conclude that the court properly revoked the defendant's probation on the basis of his failure to successfully complete a sex offender treatment program, we need not address the defendant's claim challenging the court's finding of his failure to stay at a preapproved residence.

[5] General Statutes § 53a-30 (a) provides in relevant part: "When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant . . . (12) if convicted of a violation of subdivision (2) of subsection (a) of section 53-21, section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b, undergo specialized sex offender treatment . . . ."

treatment as a condition of probation, the court was without authority to do so.[6] We disagree.

*State* v. *Cyr*, 57 Conn. App. 743, 751 A.2d 420, cert. denied, 254 Conn. 905, 755 A.2d 883 (2000), is directly on point with the issue before us. Like the defendant in this case, the defendant in *Cyr* was convicted of risk of injury to a child in violation of subdivision (1) of the applicable statute, General Statutes (Rev. to 1997) § 53-21 (1) in *Cyr*, § 53-21 (a) (1) in the present case. In *Cyr*, this court held that even though General Statutes (Rev. to 1997) § 53a-30 (a) (11), now (12), does not list the offense for which the defendant was convicted, General Statutes (Rev. to 1997) § 53a-30 (a) (12), now (17),[7] "gives the court, in its discretion, the authority to do what it deems reasonably necessary to rehabilitate the probationer and to protect prospective victims of such probationers." *State* v. *Cyr*, supra, 748. The court held that the sex offender treatment condition imposed by the sentencing court in *Cyr* was authorized pursuant to § 53a-30 (a) (12), now (17), regardless of the fact that the crimes for which the defendant was convicted did not fall within the purview of § 53a-30 (a) (11), now (12). Id. Because the present case is indistinguishable from *Cyr*,[8] the defendant's claim must fail.

[6] We note that the defendant does not dispute, as a factual matter, that he refused to admit guilt in conjunction with his sex offender treatment, nor does he dispute that he was discharged from such treatment.

[7] General Statutes (Rev. to 2003) § 53a-30 (a) provides in relevant part: "When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant . . . (16) *satisfy any other conditions reasonably related to the defendant's rehabilitation. . . .*" The 2003 revision of the General Statutes is applicable in the present case. In the 1997 revision applicable in *Cyr*, the italicized language appeared in subdivision (12) of § 53a-30 (a). Currently, it appears in subdivision (17).

[8] The defendant attempts to distinguish *Cyr* from the present case by arguing that because General Statutes § 1-2z, the statute regarding statutory interpretation, was not in effect when *Cyr* was decided, the analysis required to interpret General Statutes § 53a-30 since its enactment would differ. The defendant's claim is unavailing because the court's analysis in *Cyr* was consistent with the rules of statutory construction outlined in § 1-2z.

## II

The defendant next claims that the court was required to notify him, when he entered his guilty plea under the *Alford* doctrine, that a failure to acknowledge that he committed the acts with which he was charged would result in a violation of his probation. We are not persuaded.

At the outset, we review the pertinent law governing guilty pleas. "It is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury. . . . In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. . . . The . . . constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book §§ [39-19 and 39-20]. . . . The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense." (Internal quotation marks omitted.) *State* v. *Greene*, 274 Conn. 134, 143–44, 874 A.2d 750 (2005).

"There is no requirement . . . that the defendant be advised of every possible consequence of such a plea. . . . Although a defendant must be aware of the direct consequences of a plea, the scope of direct consequences is very narrow. . . . In Connecticut, the direct consequences of a defendant's plea include only the mandatory minimum and maximum possible sentences; Practice Book § [39-19 (2) and (4)]; the maximum possible consecutive sentence; Practice Book § [39-19 (4)]; the possibility of additional punishment imposed because of previous conviction(s); Practice Book § [39-

19 (4)]; and the fact that the particular offense does not permit a sentence to be suspended. Practice Book § [39-19 (3)] . . . ." (Internal quotation marks omitted.) *State* v. *Greene*, supra, 274 Conn. 145.

"Although [p]robation is the product of statute . . . modifications of probation routinely are left to the office of adult probation. When the court imposes probation, a defendant thereby accepts the possibility that the terms of probation may be modified or enlarged in the future pursuant to § 53a-30. . . . Finally, the due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation. *Black* v. *Romano*, 471 U.S. 606, 610, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985) . . . . Where noncriminal activity forms the basis for the revocation of probation . . . due process mandates that the [probationer] cannot be subject[ed] to a forfeiture of his liberty for those acts unless he is given prior fair warning." (Citations omitted; internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 202–203, 842 A.2d 567 (2004).

With those principles in mind, we conclude, as our Supreme Court did in *Faraday*, that the trial court was not required to notify the defendant, when he entered his plea, that a failure to acknowledge guilt could result in a violation of the condition of his probation requiring sex offender treatment. See id., 203. As in *Faraday*, the defendant here does not dispute that the trial court stated to him, when he entered his plea, that he was to undergo sex offender treatment as a condition of his probation. The Supreme Court stated: "At that point, it was not incumbent upon the trial court also to list all the potential conduct that could result in a discharge from that program. Furthermore, because the office of adult probation is free to modify the terms of the defendant's probation at any time . . . it is unrealistic

to expect the court to canvass a defendant regarding the conduct necessary to comply with those terms." (Citation omitted.) Id.

The defendant claims that General Statutes § 53a-32a,[9] which explicitly provides that a discharge from sex offender treatment for a failure to acknowledge guilt will automatically trigger a probation revocation proceeding, does not specifically refer to § 53-21 (a) (1), the statute under which he was convicted. The defendant contends that, in light of this omission, he reasonably believed that a discharge from sex offender treatment for a failure to acknowledge guilt would not result in probation revocation proceedings. Although § 53a-32a triggers an automatic violation of a probation imposed for certain underlying offenses, there is no indication in the statute, and the defendant does not provide any support for the proposition, that the statute's enumeration of automatic violations is intended to prevent the court from exercising its authority to revoke probation when revocation is not mandated. In other words, although § 53a-32a provides a mechanism for the automatic revocation of probation in cases in which the underlying crimes are specifically enumerated, it does not deprive courts of the discretion to revoke probation under other circumstances.[10]

---

[9] General Statutes § 53a-32a provides: "If a defendant who entered a plea of nolo contendere or a guilty plea under the [doctrine of *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)] to a violation of subdivision (2) of section 53-21 of the general statutes in effect prior to October 1, 2000, subdivision (2) of subsection (a) of section 53-21 or section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b, and was ordered to undergo sex offender treatment as a condition of probation, becomes ineligible for such treatment because of such defendant's refusal to acknowledge that such defendant committed the act or acts charged, such defendant shall be deemed to be in violation of the conditions of such defendant's probation and be returned to court for proceedings in accordance with section 53a-32."

[10] The defendant also contends that because *Faraday* was decided after he entered his plea, reliance on it would be retroactive and improper. The defendant's claim is unavailing because *Faraday* did not create new law but was founded on the well established principle that a court can impose

In this case, the defendant was informed by the court, at the time that he was sentenced, that he would be required, as part of his probation, to complete recommended sex offender treatment and to abide by any additional conditions deemed necessary by the office of adult probation. The defendant had notice of the court's ability to impose conditions of probation consistent with his rehabilitation and the safety of the community, and the authority of the office of adult probation to modify or to enlarge the conditions at any time. Additionally, the record reveals that the defendant was told several times, including prior to entering the sex offender treatment program, that refusing to admit to the crimes for which he was convicted would result in an unsatisfactory discharge from the program and the initiation of probation revocation proceedings. As in *Faraday*, although the defendant was free to maintain the innocence associated with his plea in order to maintain the conditional liberty created by probation, he was required to comply with its conditions. See *State* v. *Faraday*, supra, 268 Conn. 206. We therefore conclude that the defendant was adequately apprised of the conditions of his probation and the consequences of his continued denial of guilt with respect to the crimes for which he was convicted.

The judgments are affirmed.

In this opinion the other judges concurred.

---

conditions of probation that are reasonably related to the defendant's rehabilitation, that the defendant may be required to comply with any and all conditions the court could have imposed under General Statutes § 53a-30 (a) and, pursuant to § 53a-30 (c), the office of adult probation, at any time during the period of probation, may modify or enlarge the conditions, whether originally imposed by the court or otherwise. See *State* v. *Smith*, 207 Conn. 152, 540 A.2d 679 (1988).