STATE OF CONNECTICUT *v.* BRUCE T.[1]
(AC 26553)

Flynn, C. J., and Bishop and McLachlan, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued September 26—officially released December 5, 2006

*H. Owen Chace*, special public defender, for the appellant (defendant).

*Nancy L. Chupak*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Gail P. Hardy*, assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Bruce T., appeals from the judgment of the trial court revoking his probation pursuant to General Statutes § 53a-32. On appeal, the defendant claims that the court improperly determined that he had violated his probation on the basis of his discharge from sex offender treatment for his refusal to acknowledge that he committed the acts that gave rise to his underlying conviction. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On October 30, 1998, the defendant was convicted after a court trial of sexual assault in the first degree, sexual assault in the third degree and risk of injury to a child, pursuant to General Statutes §§ 53a-70, 53a-72a and 53-21, respectively. The defendant was sentenced to a total effective term of fifteen years incarceration, execution suspended after ten years, with ten years of probation.

In addition to the standard conditions of probation, the court imposed certain special conditions, including the obligation that defendant receive sex offender treatment. These conditions of probation were reviewed and acknowledged by the defendant on February 9, 1999, and on December 18, 2003.

On December 12, 2003, the defendant was released from incarceration and placed on probation,[2] which commenced on that date. On December 18, 2003, and January 7, 2004, the defendant reviewed and acknowledged various intensive supervision conditions of probation that were imposed as a result of his sexual assault related offenses. On December 30, 2003, the defendant was referred to a private special services provider to begin receiving his sex offender treatment. Pursuant to this referral, the defendant was notified that the office of adult probation required him, as part of his sex offender treatment, to admit culpability for the underlying offenses. On January 22, 2004, the defendant executed a treatment contract acknowledging that he could be discharged from the treatment program if he was unwilling to acknowledge his behavior within six months of beginning treatment.

The defendant began receiving sex offender treatment in January, 2004. On September 1, 2004, the defendant was discharged from the program because he refused to admit culpability for any of the underlying sexual assault related offenses. On September 21, 2004, the defendant's probation officer applied for an arrest warrant and sought to revoke the defendant's probation as a result of, inter alia, the defendant's unsatisfactory discharge from a sexual offender treatment program. The court held a probation revocation hearing on the

---

[2] The defendant was not placed on parole because he had completed the nonsuspended portion of his sentence after being given pretrial confinement credit and good time credits from the department of correction.

matter on December 7 and 20, 2004, during which the court heard testimony from the defendant's probation officer, a clinician from special services, the defendant's employer and the defendant. On January 5, 2005, the court found that the defendant had violated the condition of his probation to undergo and successfully to complete sex offender treatment by steadfastly refusing to acknowledge his responsibility for the underlying offenses. The court then revoked the defendant's probation and imposed a sentence of five years, execution suspended after eighteen months, with twenty years of probation. This appeal followed.

On appeal, the defendant claims that because General Statutes § 53a-32a[3] pertains only to probationers who entered a plea of nolo contendere or a guilty plea to the underlying offense under the doctrine of *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), it is not applicable to the defendant, who was convicted after a court trial. The defendant claims, therefore, that he was not provided with fair notice that he would be in violation of probation for his refusal to acknowledge that he committed the underlying acts as part of his sex offender treatment. We disagree.

To address the defendant's claim, we must first consider what effect, if any, § 53a-32a has on the defendant who was convicted after trial. We are presented, therefore, with an issue of statutory interpretation. As such,

---

[3] General Statutes § 53a-32a provides in relevant part: "If a defendant who entered a plea of nolo contendere or a guilty plea under the [doctrine of *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)] to a violation of [inter alia] subdivision (2) of section 53-21 of the general statutes in effect prior to October 1, 2000 . . . section 53a-70, 53a-70a [or] 53a-72a . . . and was ordered to undergo sex offender treatment as a condition of probation, becomes ineligible for such treatment because of such defendant's refusal to acknowledge that such defendant committed the act or acts charged, such defendant shall be deemed to be in violation of the conditions of such defendant's probation and be returned to court for proceedings in accordance with section 53a-32."

our review is plenary. See *State* v. *Prazeres*, 97 Conn. App. 591, 594, 905 A.2d 719 (2006).

At the outset, we note the defendant's critical misapplication of § 53a-32a. Specifically, the foundation of the defendant's claim rests on the false premise that § 53a-32a *exclusively* governs probation violations involving a defendant's discharge from sex offender treatment for refusal to acknowledge culpability for the underlying sexual assault related offense. Building on this false premise, the defendant incorrectly reasons that because § 53a-32a exclusively governs such probation violations and pertains only to probationers who entered a plea of nolo contendere or a guilty plea under the *Alford* doctrine, the defendant, who was convicted after trial, cannot be held in violation of his probation for his refusal to admit culpability for the underlying offenses as part of his sex offender treatment.

"Prior to the enactment of § 53a-32a, it was at the discretion of the office of adult probation to determine whether a discharge from the program warranted a revocation proceeding, whereas § 53a-32a provides that a discharge from sex offender treatment automatically results in a revocation proceeding." *State* v. *Faraday*, 268 Conn. 174, 203 n.16, 842 A.2d 567 (2004). The purpose of the enactment of § 53a-32a was to correct a loophole, which previously had allowed a probationer discharged from sex offender treatment for his failure to admit guilt to go unsupervised for two years following his discharge. Id. Section 53a-32a, therefore, is simply a statutory, procedural mechanism that triggers automatic revocation proceedings for certain probationers who are discharged from sex offender treatment for refusal to acknowledge that they committed the act or acts for which they were convicted. See *State* v. *Roy D.*, 95 Conn. App. 686, 694, 897 A.2d 733 ("§ 53a-32a provides a mechanism for the automatic revocation of

probation in [certain] cases"), cert. denied, 280 Conn. 904, 907 A.2d 94 (2006).

"Although . . . § 53a-32a triggers an automatic violation of a probation imposed for certain underlying offenses, *there is no indication in the statute . . . that the statute's enumeration of automatic violations is intended to prevent the court from exercising its authority to revoke probation when revocation is not mandated.*" (Emphasis added.) Id. Thus, § 53a-32a in no way bars a probation officer from seeking revocation when a defendant, in the reasonable judgment of the probation officer, has violated a condition of probation, nor does it inhibit a court's ability to act on such a violation if the court determines that a violation has been established. See General Statutes § 53a-32.[4] In other words, simply because the *automatic* revocation

---

[4] General Statutes § 53a-32 (a) provides in relevant part: "At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. . . . Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving such other officer a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of the defendant's probation. Such written statement, delivered with the defendant by the arresting officer to the official in charge of any correctional center or other place of detention, shall be sufficient warrant for the detention of the defendant. After making such an arrest, such probation officer shall present to the detaining authorities a similar statement of the circumstances of violation. . . . Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge, shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in such defendant's own behalf."

proceeding established by § 53a-32a arguably is inapplicable to a defendant convicted after trial, it does not follow that such a defendant is immune from a *discretionary* revocation sought by the defendant's probation officer on the basis of the defendant's discharge from sex offender treatment in accordance with the normal procedures set forth in § 53a-32.

Here, the defendant does not dispute that he was discharged from the sex offender program because he refused to admit culpability for the underlying sexual assault related offenses. Upon his discharge, the defendant's probation officer exercised his discretion and sought revocation on the basis of this discharge. After an adversarial evidentiary hearing, the court determined that the state had met its burden[5] of establishing the violation. Upon finding that a violation had occurred, the court properly revoked the defendant's probation pursuant to § 53a-32 (b).[6]

Because the defendant's probation was revoked properly pursuant to the procedure established by § 53a-32,

---

[5] The court determined that the state established by a fair preponderance of the evidence that the defendant was obligated, as a condition of probation, to undergo and successfully complete sex offender treatment and had violated that condition by steadfastly refusing to acknowledge his responsibility for the underlying offense. See *State* v. *Faraday*, supra, 268 Conn. 183 ("state must prove each alleged violation of probation by a preponderance of the evidence at a revocation proceeding, in accordance with . . . § 53a-32").

[6] In making its determination, the court carefully analyzed (1) the defendant's liberty interests versus the protection of the public, (2) whether the defendant was still a good risk and (3) whether the defendant's behavior was hostile to his rehabilitation. See *State* v. *Fagan*, 280 Conn. 69, 105, 905 A.2d 1101 (2006) ("A revocation proceeding is held to determine whether the goals of rehabilitation thought to be served by probation have faltered, requiring an end to the conditional freedom obtained by a defendant at a sentencing that allowed him or her to serve less than a full sentence. . . . [T]he ultimate question [in the probation process is] whether the probationer is still a good risk . . . . This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public." [Internal quotation marks omitted.]).

we conclude that § 53a-32a is irrelevant with respect to the defendant's probation revocation. Thus, to the extent that the defendant's claim rests on the premise that § 53a-32a bars the court from revoking his probation on the basis of his refusal to acknowledge the acts that gave rise to his underlying conviction as part of his sex offender treatment, we conclude that this claim is without merit. Moreover, to the extent that the defendant's claim of lack of notice rests on the applicability of § 53a-32a to his case, our conclusion that § 53a-32a is irrelevant to the defendant's probation revocation is dispositive.

With respect to notice, the defendant further claims that his due process rights were violated under the fourteenth amendment to the United States constitution because he was not given fair warning that his conduct was prohibited. We disagree.

"[T]he due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation. . . . In this regard . . . [w]here noncriminal activity forms the basis for the revocation of probation . . . due process mandates that the [probationer] cannot be subject[ed] to a forfeiture of his liberty for those acts unless he is given prior fair warning." (Citations omitted; internal quotation marks omitted.) *State* v. *Faraday*, supra, 268 Conn. 202–203. "[A]ssertions that the defendant lacked prior notice of the conditions underlying the probation revocation [involve a question] of law for which our review is plenary." *State* v. *Reilly*, 60 Conn. App. 716, 727, 760 A.2d 1001 (2000).

Here, because noncriminal activity formed the basis for the revocation of the defendant's probation, the relevant question before this court is "whether the

defendant had notice, or prior fair warning, that the behavior charged, and found to have occurred, would precipitate a possible revocation of his probation." Id., 730. "Courts recognize . . . that a defendant may receive notice and fair warning sufficient to comport with due process without necessarily receiving that notice from a court. Indeed, probation officers can provide adequate fair warning. Courts universally require, however, some set of circumstances, be it in a courtroom or in a meeting with a probation officer, a prohibition or common sense inference of a prohibition drawn from the situation, that creates an understanding and appreciation that engaging in certain conduct may result in a termination of conditional liberty." Id., 731.

The record reveals that the defendant was informed by the court at his original sentencing that he would be required, as part of his probation, to receive recommended sex offender treatment. The defendant's conditions of probation were reviewed and acknowledged by the defendant on two subsequent occasions. More importantly, the defendant does not dispute that prior to entering into sex offender treatment, he received notice of the specific condition of probation imposed by the office of probation that he would be required to admit responsibility for the underlying offenses. The defendant then executed a treatment contract acknowledging that he would be terminated from treatment if he did not admit responsibility within six months of beginning treatment. We therefore agree with the court and conclude that the defendant was adequately apprised of the conditions of his probation and the consequences of his continued denial of guilt with respect to the crimes for which he was convicted.

The judgment is affirmed.

In this opinion the other judges concurred.